Argued and submitted March 18, reversed July 6, reconsideration denied September 2, petition for review denied October 18, 1988 (307 Or 77)

# PORTLAND DEVELOPMENT COMMISSION,
*Appellant,*

*v.*

# CH2M HILL NORTHWEST, INC.,
*Defendant,*

*and*

# WESTERN PACIFIC FOUNDATION CO.,
*Respondent.*

## (A8508-04965; CA A42840)

758 P2d 353

Preston C. Hiefield, Jr., Portland, argued the cause and submitted the briefs for appellant.

Arthur D. McGarry, Portland, argued the cause for respondent. On the brief was Mitchell C. Wall and Wall & Wall, P.C., Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Plaintiff Portland Development Commission appeals a judgment in favor of Riedel International, Inc. (Riedel), for attorney fees of $167,830.25, purportedly awarded pursuant to ORS 20.105(1).

In 1979, plaintiff contracted with defendant CH2M Hill Northwest (CH2M) to provide design services, plans and specifications for construction of a breakwater for plaintiff's South Downtown Development Project. In June, 1984, Riedel was awarded the construction contract.[1] In the summer or early fall, Riedel notified plaintiff that the plans and specifications provided by CH2M were not final and were not sufficient for construction of the breakwater. CH2M took the position that it had performed its contract with plaintiff and that the plans required Riedel to design and build the breakwater. Riedel proceeded to build the breakwater. In the spring of 1985, blowouts and cracks became evident in the breakwater units. Plaintiff engaged an engineering firm to determine the cause of the failures. Riedel claimed additional costs and had ongoing negotiations with plaintiff regarding the claims.

On August 9, 1985, plaintiff filed this declaratory judgment action against CH2M and Riedel. Plaintiff alleged that it construed its contract with CH2M to provide that CH2M was to prepare final plans, that Riedel contended that the plans were not final and that, because of that, Riedel had asserted a claim for damages of $400,000 against plaintiff. Plaintiff prayed for a declaration that its contract with CH2M required CH2M to provide final plans, that the plans provided by CH2M were not final and that the plans did not require the contractor to design the breakwater.

On September 24, after the action had been filed, Hayford, of the engineering firm retained by plaintiff, sent a letter to plaintiff which detailed the problems and possible solutions for the failures in the concrete units. He concluded that there were design difficulties and that the units did not have adequate concrete cover on the "rebar"; plaintiff blamed the latter deficiency on inadequate workmanship by Riedel. On January 28, 1986, Hayford confirmed by letter to plaintiff

---

[1] Riedel subcontracted with Bellingham Marine Industries, Inc. (BMI), to build the units.

that it would take $55,320 to maintain the units because of the inadequate concrete cover, and plaintiff withheld that amount from its contract payment to Riedel.

The declaratory judgment action proceeded in three phases. The first concluded on June 23, 1986, when all the parties stipulated that, under the contract with plaintiff, CH2M was to provide final design plans and specifications for the breakwater. Judgment was entered on the stipulation, reserving for trial the issue of whether CH2M had fulfilled its responsibility. Also unresolved was plaintiff's claim for damages from Riedel for inadequate workmanship.[2] Riedel filed an amended answer and counterclaim, alleging that plaintiff had no basis for asserting inadequate workmanship and that plaintiff had involved Riedel in litigation to avoid paying the contract balance. Riedel alleged that plaintiff's conduct justified an award of attorney fees. The second phase of the proceeding concluded after a trial in August. The court found that CH2M had not provided final design plans or specifications. The third phase of the proceeding determined damages. The court dismissed plaintiff's claim against Riedel for $55,320 for failure of proof and ordered CH2M to indemnify plaintiff for Riedel's claims against plaintiff. The court also allowed Riedel's claim for attorney fees.

The bifurcated nature of the proceeding apparently led the trial court to conclude that attorney fees were warranted under ORS 20.105(1). The court held that, although plaintiff had an "understandable position" at the time it filed the proceeding, its refusal to pay the $55,320 after receiving Hayford's September letter was "inexplicable." The court apparently concluded that plaintiff should have proved its case against CH2M, using Riedel personnel as witnesses instead of joining it as a party. Apparently because plaintiff pursued its damages claim against Riedel, the trial court concluded that attorney fees should be awarded to Riedel.[3]

---

[2] In September, 1986, plaintiff amended its claim to allege inadequate workmanship specifically on the part of Riedel, claiming $55,320 as damages.

[3] In its memorandum opinion, the court stated, in part:

"[Plaintiff] has offered no evidence that [Riedel] did other than follow the * * * terms [of the contract between the parties] to attempt to resolve the dispute. [Plaintiff] has offered no cogent reasons for its failure to pay the contract balance following receipt of Mike Hayford's letter of September 25, 1985. [Plaintiff]

ORS 20.105(1) provides:

"In any civil action, suit or other proceeding in a district court, a circuit court or the Oregon Tax Court, or in any civil appeal to or review by the Court of Appeals or Supreme Court, the court may, in its discretion, award reasonable attorney fees appropriate in the circumstances to a party against whom a claim, defense or ground for appeal or review is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the claim, defense or ground, upon a finding by the court that the party wilfully disobeyed a court order or acted in bad faith, wantonly or solely for oppressive reasons."

We have not previously examined the standards under ORS 20.105,[4] apart from suggesting its applicability to "frivolous" and "malicious" claims. *See Kling v. Exxon Corp.,* 74 Or App 399, 404, 703 P2d 1021 (1985). The terminology "bad faith, wantonly or solely for oppressive reasons" was adopted from *Alyeska Pipeline Co. v. Wilderness Soc.,* 421 US 420, 95 S Ct 1612, 44 L Ed 2d 141 (1975), and reflects the standards used in federal cases.[5] However, *Alyeska*[6] did not

maintained an understandable position prior to that letter, but its refusal to pay the contract balance thereafter is inexplicable. As a result, Riedel and BMI have been forced to incur costs and litigation expenses which were unnecessary, and solely due to [plaintiff's] unfounded claims of inadequate workmanship."

In a January, 1987, letter to the parties the court further explained:

"Although [plaintiff] and BMI/Riedel were not in disagreement that the plans and specifications were incomplete, the contractors' interpretation and utilization of the plans was necessary to prove the noncompletion. This, however, could have been effectuated by calling those persons as witnesses, without involving them as parties in the first phase of the trial."

[4] The legislative history of the statute is sparse. It evolved out of bills submitted to the 1983 legislature by the Department of Justice to allow awards of attorney fees to agencies in order to try to stem the filing of claims which were patently "sham" and "frivolous." When ORS 20.105 was adopted, "sham" and "frivolous" were replaced by "bad faith, wantonly, or solely for oppressive reasons." *See* Minutes, House Committee on Judiciary, Subcommittee 2, April 14, 1983.

[5] *See* Minutes, House Committee on Judiciary, Subcommittee 2, February 8, 1983; Conference Committee, July 15, 1983.

[6] In *Alyeska* the Supreme Court traced the history of the "American rule," which requires a prevailing party to pay its own attorney fees. The court rejected the exception to that rule for actions brought for public benefit (the so-called "private attorney general" exception), unless such fees are explicitly permitted by statute. The court did recognize the bad faith exception, which has its foundation in equitable proceedings.

define "bad faith,"[7] nor did the cases on which it relied. Later federal cases have made it clear that a finding of "bad faith" requires clear evidence that a claim has been made entirely without any basis in fact or law. *See Browning Debenture Holders' Committee v. DASA Corp.,* 560 F2d 1078, 1088 (2nd Cir 1977). *Nemeroff v. Abelson,* 620 F2d 339, 348 (2nd Cir 1980), defined a colorable claim, for the purpose of the bad faith exception, as one which

> "has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim. The question is whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts actually had been established." (Footnote omitted; emphasis deleted.)

Riedel argues that plaintiff's actions were taken in bad faith, because there was never any reason to involve Riedel in a judicial determination of any of the issues.[8] Riedel contends that plaintiff always claimed that CH2M was obligated to provide final plans and did not do so and that the declaratory judgment proceeding was a tactic to avoid paying Riedel under the contract between it and plaintiff until plaintiff could compel CH2M to pay.[9]

The relationship of the parties does not support the conclusion that plaintiff's action against Riedel was undertaken solely for oppressive reasons *or* in bad faith. When plaintiff began the proceeding against Riedel and CH2M, a reasonable attorney could have concluded that a declaratory judgment proceeding was appropriate to resolve the conflicting positions. At that time plaintiff knew that the breakwater units were flawed. It also knew that Riedel was contending

---

[7] We do not separately address the "wantonly" standard, which denotes an act of greater depravity than bad faith. *See Chafin v. Chafin,* 239 Or 374, 397 P2d 771 (1964). Riedel does not argue that plaintiff's acts here involved moral turpitude.

[8] Riedel suggests that plaintiff acted in bad faith, because plaintiff and it were involved in negotiations before the filing of the action. Negotiations and proposed settlements do not preclude filing litigation nor show that a filing is done in bad faith. To conclude otherwise would discourage prelitigation attempts to resolve disputes.

[9] Part of the claim made by Riedel was for amounts submitted to it by its subcontractor, BMI. Plaintiff submits that its contract with Riedel did not obligate it to honor that claim. Riedel contends that plaintiff was bound to pay that claim under their contract. Riedel could have, but did not, pursue a separate action against plaintiff for breach of contract. Because of our determination, we do not reach the issue of plaintiff's contractual obligations.

that the units could not be properly built because the design plans were not final and that CH2M was taking the position that it was not responsible for final designs or, alternatively, that it had provided them. Riedel was claiming additional costs. If CH2M was correct in its position, the failures in the breakwater could be due to Riedel's workmanship. To resolve the conflicting positions, it was proper to join Riedel as a party.

In *State Farm Fire & Cas. v. Reuter,* 294 Or 446, 657 P2d 1231 (1983), the Supreme Court approved joining a potential third-party claimant in a declaratory judgment proceeding to determine rights under a policy issued by the plaintiff to the defendant Reuter. The court noted that the third party would not be bound by the declaration if it were not joined. The situation in *Reuter* is analogous to that here. The obligations and liabilities of the parties were interrelated. If the failure of the breakwater units was due to CH2M's faulty design, then CH2M was potentially obligated to Riedel for its claims; if CH2M was not responsible, then Riedel's claim against plaintiff was possibly invalid.

That Riedel was a proper party was recognized by the trial court. In November, Riedel moved to be dismissed as a party on the ground that plaintiff sought no relief against it. The presiding judge denied the motion. During the trial, Riedel moved for summary judgment and again reasserted its position that plaintiff had no dispute with Riedel. The trial court denied the motion, stating that the contract between CH2M and plaintiff was ambiguous and, even though Riedel and plaintiff were in agreement, their understanding of the contract might not be correct:

"[I]f you [Riedel] were let out of this case at this point, would you not agree that you would be in a strange procedural posture if I find that CH2M Hill did what was required under the contract?"

There was a valid legal basis for joining Riedel, and we do not agree that pursuing its damage claim after receipt of Hayford's letter shows bad faith on the part of plaintiff. In a declaratory judgment proceeding, the court has the power to grant relief beyond interpreting the contractual obligations of the parties. ORS 28.080. The parties here agreed that the court could grant supplementary relief. Hayford's letter

clearly states that the concrete covering on the rebar did not meet the Uniform Building Code requirements for reinforced concrete and estimated that the amount of maintenance which would be needed because of the inadequate covering as $55,320. A registered professional engineer testified that, if the rebar was bent and properly placed in the right sequence, the breakwater units could be built with the proper clearances. The chief engineer for plaintiff testified that, in July, before the proceeding was filed, there was "evidence of poor workmanship." Plaintiff did not have to make the determination whether proper clearance could be met within the specifications or whether the problem was the result of inadequate workmanship. That issue was a proper one for resolution at trial. The fact that the trial court dismissed plaintiff's claim for failure of proof does not mean there was not a reasonable belief that the claim had a factual basis at the time it was brought.

We determine that plaintiff had legal and factual reasons for filing and continuing the proceeding.[10] The facts do not support the conclusion that plaintiff acted in bad faith to justify an award of fees under ORS 20.105(1).[11]

Reversed.

---

[10] Our decision renders moot plaintiff's second assignment of error.

[11] Plaintiff also assigns error to the trial court's order requiring it to pay one-half of the cost of preparing the transcript. Riedel claims that plaintiff should pay the entire cost. We need not decide whether the trial court's ruling was in error. Plaintiff, having prevailed on its appeal, is entitled to the cost of preparing the transcript, including what the trial court required it to pay, as part of costs on appeal. ORS 19.084(2).