Argued and submitted June 14, 1989, the decision of the Court of Appeals and judgment of the circuit court affirmed on merits and reversed on award of attorney fees December 20, 1990

## Virginia Dare MATTIZA, as Guardian/Conservator of Virginia Dare Sandy, a Protected Person, *Petitioner on Review,*

*v.*

## Dorothy Jean FOSTER, *Respondent on Review.*

## (No. 87-01-21356-L; CA A46889; SC S35734)

803 P2d 723

■■■■■■■■■■■■■■■■■■■■■■■■■

Virginia Dare Mattiza, Austin, Texas, filed the petitions for review and reconsideration, memorandum, and argued the cause *pro se.*

H. Clifford Looney, Vale, argued the cause for respondent on review. With him on the response and memorandum was Butler & Looney, P.C., Vale.

Phillip D. Chadsey, Portland, filed a brief on behalf of *amicus curiae* Oregon Fellows of the American College of Trial Lawyers.

Joel S. DeVore, Eugene, filed a brief on behalf of *amicus curiae* Oregon Association of Defense Counsel. With him on the brief was Luvaas, Cobb, Richards & Fraser, P.C., Eugene.

Before Peterson, Chief Justice, and Linde,** Carson, Jones,*** Gillette, Van Hoomissen, and Fadeley, Justices.

CARSON, J.

---

** Linde, J., retired January 31, 1990.

*** Jones, J., resigned April 30, 1990.

## CARSON, J.

Upon review in this court, the issue before us is whether the trial court properly awarded defendant attorney fees, pursuant to ORS 20.105(1),[1] after finding that plaintiff had acted in bad faith in bringing and pursuing an action for undue influence. The Court of Appeals affirmed the trial court's award of attorney fees. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1984, plaintiff, who resided in Texas, visited her 89-year-old aunt Virginia Dare Sandy in Ontario, Oregon. Plaintiff found her aunt unkempt and living in squalor. Concerned about these conditions, plaintiff initiated guardianship proceedings, and in 1985, plaintiff was appointed her aunt's guardian and conservator of her aunt's estate. In the course of arranging her aunt's affairs, plaintiff discovered that, in January 1985, her aunt had purchased a $10,000 certificate of deposit in the name of defendant, then her aunt's neighbor. Plaintiff became convinced that the $10,000 transfer was the result of defendant's improper influence over her aunt.

Plaintiff, as conservator of her aunt's estate, subsequently brought this action[2] in circuit court for return of the $10,000, plus interest. The trial judge made extensive findings of fact and conclusions of law, and held that defendant had not exercised undue influence over plaintiff's aunt. After making the additional finding that plaintiff's claims were asserted in bad faith, the court awarded $7,620 in attorney fees to defendant.

The Court of Appeals, in a *per curiam* opinion, affirmed the trial court's judgment, including the award of attorney fees. *Mattiza v. Foster,* 93 Or App 619, 762 P2d 1067

---

[1] ORS 20.105(1) provides:

"In any civil action, suit or other proceeding in a district court, a circuit court or the Oregon Tax Court, or in any civil appeal to or review by the Court of Appeals or Supreme Court, the court may, in its discretion, award reasonable attorney fees appropriate in the circumstances to a party against whom a claim, defense or ground for appeal or review is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the claim, defense or ground, upon a finding by the court that the party wilfully disobeyed a court order or acted in bad faith, wantonly or solely for oppressive reasons."

[2] Plaintiff was represented by counsel at trial, but has proceeded *pro se* on appeal.

(1988). The Court of Appeals' opinion did not specifically address the attorney fees issue. We allowed review to address the nature of the litigious conduct that allows a court, pursuant to ORS 20.105(1), to assess attorney fees for actions that are taken "in bad faith, wantonly or solely for oppressive purposes."[3] In so doing, we discuss the legislative history of the statute and set forth the hierarchical analysis necessary under ORS 20.105(1).

## THE AWARD OF ATTORNEY FEES IN GENERAL

"[A]s a general rule American courts will not award attorney's fees to the prevailing party absent authorization of statute or contract." *Deras v. Meyers,* 272 Or 47, 65, 535 P2d 541 (1975). *See Alyeska Pipeline Serv. v. Wilderness Soc.,* 421 US 240, 247, 95 S Ct 1612, 44 L Ed 2d 141 (1975); 6 Moore's Federal Practice ¶ 54.78[1] (2d ed 1 990) (stating the rule). Oregon courts follow this "American rule." *See, e.g., Lewis v. Dept. of Rev.,* 294 Or 139, 142, 653 P2d 1265 (1982); *Riedel v. First National Bank,* 287 Or 285, 290-91, 598 P2d 302 (1979); *Hughes v. Bembry,* 256 Or 172, 177-78, 470 P2d 151 (1970). From time to time, the Oregon legislature has created a number of exceptions to this rule for particular classes of cases.[4] ORS 20.105(1), for example, is one provision allowing for the award of attorney fees based on the misconduct of the opposing party or attorney.

## LEGISLATIVE INTENT OF ORS 20.105(1)

■ In circumstances such as this, the task of this court in interpreting a statute is to discern the intent of the legislature. ORS 174.020. The inquiry begins with an examination of the language of the statute itself. *Whipple v. Howser,* 291 Or 475, 479, 632 P2d 782 (1981). When the language of the statute does not provide sufficient insight into the legislative intent, it is appropriate to consider legislative history. *State v. Leathers,* 271 Or 236, 242, 531 P2d 901 (1975). The term "bad faith" is not self-explanatory. Accordingly, in determining whether plaintiff's actions were of the type that the

---

[3] The other basis for an award of attorney fees under ORS 20.105(1) — that a party "wilfully disobeyed a court order" — is not at issue in this case.

[4] *See, e.g.,* ORCP 17 C; ORS 107.135(6); 128.155; 646.638(3).

legislature intended to address in ORS 20.105(1), we begin with an examination of the legislative history.

The legislative committees charged with the task of developing the specific language which was to become ORS 20.105(1) were deliberate about their choices. The statute began in 1983 as House Bill 2253 (sponsored by the Department of Justice), the original language of which would have permitted a court to award attorney fees to the State of Oregon when the state was a prevailing party defendant and when the court found that the opposing party had "acted frivolously or in bad faith." The bill was later amended to apply not only to the state but to any "prevailing party defendant."

Without reference to any specific case law, the Solicitor General testified that the proposed "frivolous" and "bad faith" standards both had been construed by the courts in a manner which would not penalize legitimate litigation. He compared those standards with the standard under which the state could be held liable for attorney fees. The latter standard—action by a state agency without a reasonable basis in fact or in law[5]—was considered by the Solicitor General to require less serious misconduct than the proposed standards of "frivolous" and "bad faith." That is, a finding of bad faith under House Bill 2253 would have required something more than a lack of a reasonable basis in fact or in law.

Although the meanings of the quoted terms were discussed at length by committee members and witnesses, ultimately the committee decided that the terms should remain undefined, allowing the courts to determine their limits. House Bill 2253 eventually was tabled in committee, as was its successor, House Bill 3012.[6]

The current language of ORS 20.105(1) emerged from a conference committee[7] as an amendment to House Bill

---

[5] *See* ORS 183.497(1)(b).

[6] House Bill 3012 would have allowed an award of attorney fees if the court found that the claim, defense, or ground for appeal was "sham or frivolous."

[7] The conference committee, which consisted of two senators and two representatives, voted to concur in Senate amendments to the bill and to add the amendment regarding attorney fees. Many of the same people were involved in the task of preparing all three of the bills which eventually led to ORS 20.105(1).

2364, which previously had not concerned the award of attorney fees for improper litigious conduct. Examination of the conference committee meeting transcripts reveals that the amendment was a resurrection and refinement of the then-defunct House Bill 3012. It was at this time that the language "in bad faith, wantonly, or solely for oppressive reasons" was suggested. From the minutes, it is clear that the committee's intent was for the specific language chosen to reflect the existing *federal* bad faith standard referred to in *Alyeska Pipeline Serv. v. Wilderness Soc., supra,* despite some uncertainty about what that standard actually was.

In summary, the legislative history of ORS 20.105(1) demonstrates the following: (1) A great deal of discussion and thought preceded the choice of the specific terms used in the statute; (2) there was an intent among those who chose the language to incorporate the federal "bad faith" standard mentioned in *Alyeska;* and (3) the committee charged with developing the statute deliberately left to the courts the task of shaping the contours of the somewhat broad language chosen.

## ANALYSIS UNDER ORS 20.105(1)

At issue in this case is whether plaintiff acted in bad faith. However, in order to answer that question, it is necessary to set forth the complete hierarchical analysis required under ORS 20.105(1). This analysis is derived from the terms of the statute, federal bad-faith cases, and cases from our Court of Appeals.

Although it figured prominently in legislative committee discussions, *Alyeska Pipeline Serv. v. Wilderness Soc., supra,* was not a bad-faith case, and the United States Supreme Court did not define the term. Nor did the cases cited by the *Alyeska* court define "bad faith." However, since *Alyeska,* the federal courts have provided significant guidance regarding the definition of bad faith, as discussed below.[8]

---

[8] Much of the litigation relating to bad-faith determinations arises under Federal Rule of Civil Procedure 11, which provides, in part:

"Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record * * * The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for

*Prevailing Party*

By its terms, ORS 20.105(1) first requires that the party to whom attorney fees are to be awarded must be a prevailing party. In the case before us, there is no dispute about this aspect of the statute; defendant clearly prevailed in the underlying action.[9]

*Meritlessness*

Both the federal courts and our Court of Appeals have required a finding of meritlessness as a prerequisite to a finding of bad faith. For example, in *Portland Development Comm. v. CH2M Hill Northwest,* 92 Or App 43, 758 P2d 353, *rev den* 307 Or 77 (1988), the Court of Appeals relied on federal cases decided subsequent to *Alyeska* but prior to enactment of ORS 20.105 to determine the meaning of "bad faith." The court, citing *Browning Debenture Holders' Committee v. DASA Corp.,* 560 F2d 1078, 1088 (2d Cir 1977), stated that "a finding of 'bad faith' requires clear evidence that a claim has been made entirely without any basis in fact or law." 92 Or App at 48. After determining that the plaintiff had legal and factual reasons for filing and continuing the proceeding, the court reversed the trial court's award of attorney fees.

Other Court of Appeals' opinions have used similar language. In *Brown v. Infotec Development, Inc.,* 88 Or App 37, 39, 744 P2d 268 (1987), the Court of Appeals, without analysis, found that the plaintiff had "brought this appeal knowing that it has no basis in law or in fact. We find that he

---

the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. * * * If a pleading, motion, or other paper is signed in violation of this rule, the court [may impose] a reasonable attorney's fee."

FRCP 11 (which finds its counterpart in ORCP 17) imposes a duty of reasonable inquiry on the attorney and is thus not perfectly analogous to ORS 20.105(1). Nonetheless, because FRCP 11 allows imposition of attorney fees for certain bad-faith actions, cases interpreting that statute provide some guidance regarding the federal "bad-faith" standard.

[9] Although in this case it is clear that defendant is the prevailing party at the trial level, designation of the prevailing party is not always so simple, especially at the appellate level. *See* ORS 20.015; *Henderson v. Jantzen, Inc.,* 303 Or 477, 481, 737 P2d 1244 (1987) (A party's "intermediate and, possibly, temporary success" does not make the party a "prevailing party.").

has acted in bad faith and that defendant is entitled to its attorney fees [under ORS 20.105]." *See also Tyler v. Hartford Insurance Group,* 98 Or App 601, 605, 780 P2d 755, *rev den* 308 Or 660 (1989) (Plaintiff "brought this appeal despite having every reason to know and to understand that it has no basis in law or in fact."); *Nortman v. City of Portland,* 93 Or App 197, 198, 761 P2d 8, *rev den* 307 Or 182 (1988) (Warren, J., dissenting) ("[N]o reasonable practitioner could honestly believe that plaintiff could obtain a reversal. I would therefore find that plaintiff's appeal was brought in bad faith.").

We agree that meritlessness is a necessary precursor to a finding of bad faith. Further, we conclude that, for purposes of ORS 20.105(1), a claim, defense, or ground for appeal or review is meritless when it is entirely devoid of legal or factual[10] support at the time it was made.[11] *Cf. Zaldivar v. City of Los Angeles,* 780 F2d 823, 830 (9th Cir 1986) ("[T]he subjective intent of the pleader or movant to file a meritorious document is of no moment."). A failure to prevail does not, alone, render a party's position meritless or even suggest that it is. *See Christianburg Garment Co. v. EEOC,* 434 US 412, 421, 98 S Ct 694, 54 L Ed 2d 648 (1978) ("[T]he term 'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case.").

To summarize, after determining that the party seeking attorney fees has prevailed, the next inquiry under ORS 20.105(1) is whether the other party's claim, defense, or ground for appeal or review was meritless. A meritless position is one that the court determines is entirely devoid of factual or legal support. The Court of Appeals' decisions cited above are correct in that they require a finding of meritlessness, but to the extent they emphasize a party's *perception* of

---

[10] The definition of meritlessness is purposely stated in the disjunctive. Because there often may be no clear distinction between factual and legal support, we use the disjunctive to mean that a position is meritless if it is not supported by the law *as applied to the facts.* For example, an airtight legal theory combined with no support on the facts of the case at hand indicates a meritless position.

[11] A claim that acknowledges the clearly contrary state of current law, but which argues for a change, may be "meritless." However, as discussed in the text below, unless this type of claim is made with an improper purpose, a court could not award attorney fees under ORS 20.105(1) to a party against whom that claim was made. Thus, there is no "chilling effect" on a good faith argument for a change in the law.

the merit of the position, that emphasis is relevant only to the party's improper purpose, discussed below. Moreover, the Court of Appeals' decisions improperly equate a lack of legal or factual merit with an ultimate finding of bad faith. A meritless claim is a prerequisite to, but rarely the equivalent of, circumstances necessary to a finding of bad faith under ORS 20.105(1).

*Improper Purpose*

■ A meritless position, alone, is not enough to warrant the award of attorney fees under ORS 20.105(1). The legislative history discussed above indicates that the statute was intended to address behavior more egregious than simply taking a position that is without merit. Federal cases, too, suggest that an improper purpose is the second prerequisite to an award of attorney fees under this provision.

In *Browning Debenture Holders' Committee v. DASA Corp., supra,* the court stated that "[a]n action is brought in bad faith when the claim is entirely without color *and* has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." 560 F2d at 1088. (Emphasis supplied.) "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." *Sierra Club v. U.S. Army Corps of Engineers,* 776 F2d 383, 390 (2d Cir 1985), *cert den* 475 US 1084 (1986). *See also Colombrito v. Kelly,* 764 F2d 122 (2d Cir 1985) (requiring both meritlessness and an improper purpose). We adopt this approach for purposes of ORS 20.105(1).

ORS 20.105(1) sets forth three types of improper purpose, any of which, when combined with a meritless position, will allow a court to award attorney fees. These improper purposes are actions taken in bad faith, wantonly, or solely for oppressive purposes. Although these are three separate standards, a single course of conduct often will demonstrate the existence of more than one of these improper purposes.[12]

■ "Bad faith" is a difficult concept to describe in concrete terms. What constitutes bad faith in a litigation setting

---

[12] In the case before us, the trial court relied solely upon the "bad faith" aspect of the improper purpose trilogy in awarding attorney fees. The trial court apparently did not find facts sufficient to support a claim of wantonness or oppression or to so conclude. We do not pursue the matter in this opinion.

necessarily depends on the facts of each case. Nonetheless, there are general guidelines. The presence of bad faith may be indicated by, among other things, a purpose of delay or harassment. *See Browning Debenture Holders' Committee v. DASA Corp., supra.* In rare cases, an improper purpose constituting bad faith may be inferred solely from the meritless nature of the claim, defense, or ground for appeal or review. *See Glick v. Koenig,* 766 F2d 265, 270 (7th Cir 1985).[13] Determining the existence of an improper purpose requires an inquiry into the subjective intent of the losing party. We conclude that, for purposes of ORS 20.105(1), "bad faith" is the assertion of a claim, defense, or ground for appeal or review, the primary aim of which is something other than the procurement of the fair adjudication of an authentic claim.

*Summary of the Hierarchical Analysis of ORS 20.105(1)*

■      An award of attorney fees under ORS 20.105(1) is appropriate when the court has made the following findings: (1) the party to whom attorney fees are to be awarded is a prevailing party; (2) the claim, defense, or ground for appeal or review is without merit; and (3) the party taking the meritless position has done so with an improper purpose.

*The Need for Findings*

■      Although, in the absence of a request for special findings by one of the parties, the court "may" make special or general findings, ORCP 62 A, the award of attorney fees under ORS 20.105(1) is a situation in which special findings are a prerequisite to meaningful review by an appellate court. *See Tyler v. Hartford Insurance Group,* 307 Or 603, 771 P2d 274 (1989) (requiring findings by Court of Appeals in cases under ORS 20.105(1)); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F2d 1486, 1508 (11th Cir 1985), *cert den* 475 US 1107 (1986) (under Florida law, the trial court "must

---

[13] In *Glick v. Koenig,* 766 F2d 265, 270 (7th Cir 1985), the court held that "the filing of a frivolous lawsuit may demonstrate bad faith where the suit is so completely without hope of succeeding that the court can infer that the plaintiff brought the suit to harass the defendants rather than to obtain a favorable judgment." We agree with this statement. However, we also note that the court in that case went on to state that the complaint was "totally without merit *and* appears to have been filed for the purpose of harassing" the defendants. *Id.* (Emphasis supplied.) Thus, a meritless position combined with an improper motive normally is required to support a finding of bad faith.

make a specific finding of 'complete absence of justiciable issue of either law or fact' or face reversal or remand on the award of attorney's fees.''). Not only should the trial court make findings regarding the merit of the party's claim, defense, or ground for appeal or review, and which of the three grounds under ORS 20.105(1) the court is considering, but it should also specify which actions of the party are violative of the statute.

## DID PLAINTIFF ACT IN BAD FAITH?

■ ■ The trial court's 18-page narration of "Findings of Fact, Conclusions of Law, Opinions and Order" indicates that the court substantially focused on plaintiff's intervention in the life of Mrs. Sandy.[14] However, that intervention, in the form of a conservatorship and a guardianship, already had been judicially validated. The focus of the trial court, when determining whether attorney fees should be awarded, should have been on plaintiff's motives in bringing and maintaining this undue influence claim. As conservator of her aunt's estate, plaintiff had a fiduciary duty to "take possession of all the property of substantial value of the protected person, and of rents, income, issues and profits therefrom whether accruing before or after the appointment of the conservator, and of the proceeds from the sale, mortgage, lease or other disposition thereof." ORS 126.293.

The trial court found:

"Plaintiff's claims were brought on mere suspicion without substance. Mrs. Mattiza certainly realized this by the time of her telephone call to Mrs. Foster [in which she allegedly stated that she realized Mrs. Foster's intentions were good] in August of 1987. Mrs. Mattiza seems somewhat paranoid about Mrs. Foster and even perhaps vindictive. This Court would view that the claims were asserted in bad faith and will award attorney fees, as well as costs and disbursements, to Defendant."

---

[14] The trial court found:

"This Court is somewhat chagrined and alarmed that an older person like Mrs. Sandy can be so easily stripped of her rights. As a society we don't even allow convicted criminals to be so easily stripped of such rights. The best that any of us can hope for as we grow older is that if we remain in control of our mental faculties we will be spared someone else deciding how we should live out our remaining years. Such will obviously not be Mrs. Sandy's lot for the remaining years of her life."

The operative phrases that apparently led the trial court to conclude that plaintiff had acted in bad faith were that the "claims were brought on mere suspicion without substance" and that plaintiff "seem[ed] somewhat paranoid about Mrs. Foster and even perhaps vindictive." Although these statements[15] describe the trial court's impressions of the matter, they simply do not constitute legally adequate conclusions of law based on findings of fact.

Applying the analysis set forth above, we ask first whether defendant prevailed. She did. The second inquiry is whether plaintiff's claim was meritless. Assuming, but not deciding, that the claim was entirely devoid of factual or legal support, we next address whether there was an improper motive.

Did plaintiff act in bad faith? Even assuming that the trial court's conclusions noted above are supported by the evidence in this case, there was no finding—and the evidence would not support a conclusion—that plaintiff's actions constituted conduct, the *primary* aim of which was something other than the procurement of the fair adjudication of an authentic claim. We conclude that, regardless of other motives she may have had, plaintiff's primary aim was to obtain an adjudication of a bona fide dispute. Defendant is not entitled to attorney fees under ORS 20.105.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed on the merits and reversed on the award of attorney fees.

---

[15] Even though the document produced by the trial court is entitled "Findings of Fact, Conclusions of Law, Opinions and Order," it consists almost exclusively of facts and opinions. No attempt was made to divide the document into separate findings and conclusions, with the latter *based on* the former.