IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| BAY AREA ATHLETIC CLUB and MARK MCPEEK, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 170159N |
| v. | ) ) | |
| COOS COUNTY ASSESSOR, | ) ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiff appealed the assessment of property identified as Account 1884900 (subject property) and Account 7887 for the "1985-2017" tax years. (*See* Compl.) By Orders entered September 6, 2017, and October 11, 2017, the court dismissed Plaintiff's appeal of Account 7887 for all tax years and of the subject property for the 1985-86 through 2015-16 tax years. Those Orders are hereby incorporated into this Decision.

A telephone trial was held on December 14, 2017, concerning the real market value of the subject property for the 2016-17 tax year. Mark McPeek (McPeek), shareholder of Bay Area Athletic Club, appeared and testified on behalf of Plaintiffs. Nathaniel Johnson, Assistant County Counsel, appeared on behalf of Defendant. Roy Metzger (Metzger), licensed appraiser, testified on behalf of Defendant. Plaintiff submitted no exhibits. Defendant submitted Exhibits A and B. At the start of trial, McPeek stated that he did not receive Defendant's Exhibits. However, Defendant filed a Certificate of Service with its Exhibits certifying that Exhibits were mailed to Plaintiffs on November 30, 2017. McPeek confirmed that the mailing address was correct. The court admitted Defendant's Exhibits.

---

[1] This Final Decision incorporates without change the court's Decision, entered March 5, 2018. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

At the conclusion of trial, Defendant renewed its motion for attorney fees in the amount of $712.50, associated with Defendant's motion to compel, as a sanction for Plaintiffs' withholding of discoverable information from Defendant. (Def's Mot to Compel Ptfs' Discovery at 4-5, Nov. 21, 2017.) McPeek requested an opportunity to respond to Defendant's motion for attorney fees. Even though Plaintiffs did not timely file a response to Defendant's motion for attorney fees, the court permitted Plaintiffs to file a written response following trial. As of the date of this Decision, the court has not received Plaintiffs' written response.

## I. STATEMENT OF FACTS

McPeek testified that the subject property is a health club built in 1979 with a swimming pool that was added in 1983, so it is approximately 38 years old. The building is "concrete tilt-up" and the pool is in a metal frame structure with fiberglass siding, which is an inexpensive enclosure. Plaintiffs recently added a "membrane roof." Metzger testified that the subject property has deferred maintenance. The subject property is 20,247 square feet and situated on a 1.06-acre lot with an additional 0.77-acre lot adjoining. (*See* Def's Ex A at 5.)

McPeek testified that Plaintiffs paid $960,000 for the subject property in 1984, but only half was for the "property" (*i.e.,* the real estate) and the rest was for the business.[2] He testified that, when purchasing a health club, some of the value is due to existing memberships, which is distinct from the value of the real estate. McPeek testified that it is "totally inappropriate" to base the subject property's real market value on its business value.

McPeek testified that the subject property is located in the "Empire District" of Coos Bay, which is a "high crime area" with a significant population of homeless and drug-addicted individuals. He testified that Coos County is "impoverished" and "tremendously poor"; it suffers

---

[2] Defendant's records identified the sale date as January 1, 1988. (Def's Ex A at 5.) Metzger was unable to explain the discrepancy between McPeek's testimony and Defendant's records.

from the highest unemployment rate in the United States. McPeek testified that the economic conditions were better when he purchased the subject property in 1984; Coos County was a rich timber county with 17 lumber mills and a significant commercial fishing industry. He testified that he used to have at least 100 club members from the commercial fishing industry and "hundreds" from the timber industry. Metzger testified that he disagreed with McPeek about the number of lumber mills operating in the county and listed at least eight.

McPeek testified that the membership base is "everything" for a health club. He testified that, as of the date of trial, he had only one member from the timber industry and one from the commercial fishing industry. McPeek testified that Plaintiffs' membership has also suffered due to competition from the community college gym. He testified that the college gym does not have to pay its staff because they are students and does not have to pay for utilities because it receives taxpayer funds. McPeek testified that the subject property's membership was only 45 to 50 percent of what it was 10 years ago.

McPeek testified that his business used to be successful: "many years ago" his average annual income from the club was $200,000, and in one year it was $300,000. He testified that he suffers from significant health problems that interfere with his management of the club, which has not been profitable for 9 or 10 years. McPeek testified that he has incurred significant losses in the past few years, "many hundreds of thousands of dollars." He testified that he does not know if someone without his health problems could achieve annual income of $200,000 again, given the local economy and competition with the college gym.

Approximately one year before the trial date, Plaintiffs listed the subject property, as well as the additional unimproved lot not at issue here, for $2.5 million. (*See* Def's Ex A at 6.) McPeek testified that he asked more than what the subject property was worth so he could

discount it later. He "discounts" the subject property when people call him. McPeek testified that the realtor would list the subject property at whatever price he wanted. He did not have an appraisal or a certified market analysis. McPeek testified that Plaintiffs had received no offers, but clarified that he received offers from two employees to purchase the subject property on contract, but found those offers to lack credibility: one, because the employee was 18 years old, and the other, because he concluded the employee (a club manager) was stealing from the club.

In a letter McPeek filed in the Coos County Circuit Court in an unrelated matter, he discussed his efforts to sell the subject property, writing "I kept hoping I would recover health and be able to perform the needed work to restore BAAC's financial losses. (30 years BAAC produced $200,000 to $300,000 profit every year). I know these last few years losses could be reversed if I was again healthy." (Def's Ex B at 3.) He continued, "I expect a sale of BAAC in the next several months." (*Id.*) When asked about that statement, McPeek testified that he was "desperate to sell" the subject property.

McPeek testified that Plaintiffs' tax burden is significantly more (300 to 400 percent) than all of the other commercial properties within a one-mile radius. He listed those properties, including a market, a property owned by the Grande Ronde tribe, a cable company, a car dealership, a shopping center, and two marinas. Metzger testified that the properties McPeek listed were not comparable to the subject property.

A.      *Defendant's Valuation Evidence*

        1.      *Sales comparison approach*

Metzger testified that he had to expand his search for comparable sales outside of Coos Bay. He identified four properties that sold between September 2015 and July 2016, located in Scappoose, Seaside, Bandon, and Stevenson, Washington. (*See* Def's Ex A at 4.) Metzger

testified that two of the sales were located on the coast. All of the properties were smaller than the subject property. (*See id.*) Metzger used two of the sales in his analysis: a 10,300-square foot property in Scappoose (sale 1) and a 2,000-square foot property in Bandon (sale 2). (*Id.* at 5.) Sale 1 was composed of 11 units of retail and office with six units occupied, according to the listing. (*Id.* at 7.) Sale 2 was the clubhouse associated with the Seaside Golf Course. (*Id.* at 9.)

Metzger made adjustments for lot size, building size, and excess land (the property tax account not at issue here[3]), finding adjusted values of $1,562,350 for sale 1 and $1,249,850 for sale 2. (*See* Def's Ex A at 5.) Metzger testified that sale 1 was his best comparable sale. (*See id.*) He determined that the subject property was superior to both comparable sales and concluded an indicated value of $1,750,000 under the sales comparison approach. (*Id.*)

2.    *Income Approach*

Metzger testified that he analyzed net operating income of both $200,000 and $300,000 because those were the annual profits that McPeek reported in other court filings. (*See* Def's Ex B at 1.) He testified that he selected a capitalization rate of 10 percent based on his review of commercial and industrial property sales within the county in 2017. (*See id.* at 5.) Metzger concluded an indicated value range of $2 million to $3 million.

B.    *Tax Roll and Requested Values*

The subject property's 2016-17 tax roll value, sustained by the board of property tax appeals, was $1,025,960, and its maximum assessed value was $1,285,580. (Compl at 2.) Plaintiffs request a 2016-17 real market value of $600,000. (*See* Or, July 10, 2017.) Defendant requests a 2016-17 real market value of $1,750,000. (Def's Ex A at 2.)

/ / /

---

[3] Metzger attributed a value of $100,000 to the excess land.

C.	*Defendant's Motion to Compel and Request for Attorney Fees*

Defendant asks the court to sanction Plaintiffs under Tax Court Rule-Magistrate Division (TCR-MD) 9 C for withholding discoverable information. (Def's Mot to Compel Ptfs' Discovery at 4, Nov 21, 2017.) Defendant alleges that Plaintiffs acted in bad faith by refusing to produce relevant documents for inspection, even though Plaintiffs stated in the subject property listing that financials were available for qualified buyers. (*Id.*) Defendant requested a monetary sanction of $712.50 for the legal fees incurred by Defendant to prepare the Motion to Compel. (*Id.* at 5.)

Following a telephone hearing on November 28, 2017, the court entered an Order on December 5, 2017, requiring Plaintiffs to make responsive documents available to Defendant. Johnson stated that Defendant had a chance to inspect Plaintiffs' records and received Plaintiffs' profit and loss statement on December 8, 2017. The statement showed losses, but included no indication of who prepared the statement or when, so Defendant did not consider it sufficiently reliable to develop an income approach. McPeek testified that his accountant prepared the profit and loss statement based on bank statements and a QuickBooks ledger.

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2016-17 tax year. ORS 308.205(1)[4] defines real market value as

> "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2016-17 tax year was January 1, 2016. *See* ORS 308.007; 308.210. There are three approaches to value that must be considered to determine the real market value of

---

[4] The court's references to the Oregon Revised Statutes are to 2015.

real property: the sales comparison approach, the cost approach, and the income approach. *See* Oregon Administrative Rule (OAR) 150-308-0240(2)(a). In a particular case, all three approaches may not be applicable; however, each approach "must be investigated for its merit." *Id.* Whether any one approach is more persuasive in a given case "is a question of fact to be determined by the court" based on the record before it. *Pacific Power & Light Co. v. Dept. of Revenue,* 286 Or 529, 533, 596 P2d 912 (1979). In this case, the court received evidence from Defendant under the sales comparison and income approaches.

The party seeking affirmative relief bears the burden of proof by a preponderance of the evidence. *See* ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue,* 4 OTR 302, 312 (1971). To meet its burden, a party must "provide competent evidence of the [real market value] of [the] property." *Woods v. Dept. of Rev.,* 16 OTR 56, 59 (2002). Competent evidence of real market value "includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor,* TC–MD 110300D, WL 879285 (Mar 13, 2012). Plaintiffs bear the burden of proof the subject property's real market value was $600,000 and Defendant bears the burden of proof that it was $1,750,000.

A.      *Plaintiff's Evidence*

Plaintiffs provided no competent evidence in support of their claim that the subject property's 2016-17 real market value was $600,000. Plaintiffs' evidence consisted of McPeek's testimony concerning his perceptions of the local market, his health problems, and his recent business losses. They did not provide any comparable sales, documentary evidence of income and expenses, or similar types of competent evidence. Plaintiffs' decision to list the subject

property for $2.5 million undercuts their claim that the real market value was $600,000.

B.    *Sales Comparison Approach*

The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management v. Lane County Assessor*, TC–MD 060354D, WL 1068455 at *3 (Apr 3, 2007) (citations omitted). Under the sales comparison approach, "only actual market transactions of property comparable to the subject, or adjusted to be comparable" may be used and all sales "must be verified to ensure they reflect arm's-length market transactions." OAR 150–308.205–(A)(2)(c). To be comparable, properties should be "similar in size, quality, age and location" to the subject property. *Richardson v. Clackamas County Assessor*, TC–MD 020869D, WL 21263620 at *3 (Mar 26, 2003).

Metzger relied on two sales of properties located outside of Coos Bay. Both properties were significantly smaller than the subject property and his best comparable sale was a multi-tenant office building rather than a health club. Metzger concluded that the subject property was superior to both of his comparable sales, so he failed to bracket the subject property. The court is not convinced by that evidence that the subject property's real market value was $1,750,000.

C.    *Income Approach*

The income method of valuation relies on the assumption that a willing investor will purchase a property for an amount that reflects the future income stream it produces." *Allen v. Dept. of Rev.*, 17 OTR 248, 253 (2003). As with the other approaches to value, "[t]he income approach relies on the profits that the property can generate at its highest and best use." *Hewlett–Packard Company v. Dept. of Rev.*, 357 Or 598, 603, 356 P3d 70 (2015). The direct capitalization method "focuses on two key components: (1) the capitalization rate (cap rate) and (2) net operating income (NOI)." *Allen v. Dept. of Rev.*, 17 OTR 248, 253 (2003).

Metzger used net operating income of $2 million and $3 million based on Plaintiffs' past profits. However, McPeek testified that Plaintiffs had not achieved those profits in 9 to 10 years and Defendant confirmed that Plaintiffs' profit and loss statement showed a loss. Generally, the income to be capitalized is based on the market and operating expenses are calculated assuming "prudent and competent management." Appraisal Institute, *Appraisal of Real Estate*, at 479 (14th Ed 2013). There is a question in this case whether a different manager could achieve a profit operating a health club in the subject property, or whether market conditions have changed such that no manager could expect to generate $200,000 of annual income again. Ultimately, the court finds the evidence of net operating income to be inconclusive. Such evidence does not support a finding that the subject property's 2016-17 real market value was $1,750,000.

D.      *Discovery Sanctions*

Citing TCR-MD 9, Defendant asks the court to award it attorney fees incurred to prepare its Motion to Compel as a sanction for Plaintiffs' withholding of relevant evidence. TCR-MD 9 C states that "[t]he court may sanction any party withholding information, including exclusion of the information from future proceedings, or any other measure the court considers appropriate."

"As a general rule American courts will not award attorney's fees to the prevailing party absent authorization of statute or contract." *Mattiza v. Foster*, 311 Or 1, 4, 803 P2d 723 (1990) (internal quotation marks and citation omitted). The tax court judge has statutory authority to award attorney fees to prevailing taxpayers in certain categories of cases. ORS 305.490(3), (4). Additionally, the court "shall award reasonable attorney fees * * * upon a finding by the court that the party willfully disobeyed a court order or that there was no objectively reasonable basis for asserting the claim, defense or ground for appeal." ORS 20.105(1). "Primarily, the court has awarded penalties against pro se tax protestors—those who do not believe in the constitutionality

of taxation as a general matter or who simply believe that their taxes are too high, without any legitimate reason to believe that is the case." Henry C. Breithaupt and Jill A. Tanner, *The Oregon Tax Court at Mid-Century*, 48 Willamette L Rev 147, 164-165 (2011).

The court concludes Defendant's request for attorney fees should be denied. First, the court questions whether such award is supported by any statutory authority. Second, even if the court has authority to award attorney fees as a discovery sanction, the court concludes no such award is warranted in this case. Although Plaintiffs initially failed to comply with TCR-MD 9 A by refusing to produce relevant documents, they complied with the court's order entered December 5, 2017, compelling production.

## III. CONCLUSION

Upon careful consideration, the court concludes that the valuation evidence presented is inconclusive, so no adjustment to the subject property's 2016-17 real market value is supported. The court further concludes that Defendant's request for attorney fees associated with filing its Motion to Compel should be denied. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal of Account 1884900 is dismissed for the 1985-86 through 2015-16 tax years.

IT IS FURTHER DECIDED that Plaintiffs' appeal of Account 1884900 is denied for the 2016-17 tax year.

IT IS FURTHER DECIDED that Plaintiffs' appeal of Account 7887 is dismissed.

IT IS FURTHER DECIDED that Defendant's request to increase the 2016-17 real market value of Account 1884900 is denied.

/ / /

/ / /

IT IS FURTHER DECIDED that Defendant's request for attorney fees is denied.

Dated this ___ day of March 2018.

 

                                      ALLISON R. BOOMER
                                      MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Boomer and entered on March 23, 2018.*