Argued and submitted May 2, affirmed November 1, 2006, petition for review allowed March 7, 2007 (342 Or 473)

JASON J. PEEPLES,
*Appellant,*

*v.*

Robert LAMPERT,
Superintendent,
Snake River Correctional Institution,
*Respondent.*

02-01-1658M; A122837 (Control)

JASON PEEPLES,
*Appellant,*

*v.*

Brian BELLEQUE,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

03-C21423; A125027
(Cases Consolidated)

146 P3d 352

Patrick M. Ebbett argued the cause for appellant. With him on the briefs was Chilton, Ebbett & Rohr, LLC.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondents. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Ortega, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge.*

LANDAU, J.

Ortega, P. J., dissenting.

---

* Landau, J., *vice* Richardson, S. J.

## LANDAU, J.

Petitioner appeals a judgment dismissing his second petition for post-conviction relief as a sanction for his refusal to participate in a scheduled deposition. ORCP 46 B, D. He argues that the court failed to make the required findings in support of such a sanction and that, in any event, the court's choice of dismissal as a sanction was unjustified. We affirm.

Because the post-conviction court's decision arose, in part, from petitioner's conduct at earlier stages of the proceedings, we begin with the procedural history of petitioner's case. In petitioner's underlying criminal trial, he pleaded guilty to one count of second-degree rape and one count of second-degree unlawful sexual penetration, and he was sentenced to 100 months' imprisonment.

Petitioner filed a *pro se* petition for post-conviction relief in January 2002. In September of the same year, an attorney filed an amended petition for him, and trial was eventually scheduled for a year later.

About one week before trial, petitioner's attorney filed a motion to allow another amended petition, which was denied. On the day of trial, petitioner requested a continuance, stating that he wanted new counsel, wished to amend his petition, and needed time to obtain three pieces of evidence that he had requested. The court denied his motion for continuance and, on petitioner's decision not to proceed on the existing petition, the court dismissed the case without prejudice.

In November 2003, petitioner filed a second *pro se* petition. His new attorney filed an amended petition in February 2004. After petitioner expressed dissatisfaction with the amended petition, his counsel wrote to him and explained each change in the petition. Although petitioner requested further changes, his counsel did not believe that any further changes were warranted.

Defendant sought to depose petitioner, and the post-conviction court granted the request, scheduling the deposition for May 2004. At the deposition, petitioner claimed that he had not realized that he was to be deposed. Defendant's

counsel confirmed that understanding of petitioner's position: "It's my understanding that you've indicated that you do not feel ready to be deposed today but wish to have it set over to a later date. Is that correct?" Petitioner answered in the affirmative.

Defendant then moved to dismiss the petition on the ground that petitioner had refused to participate in his deposition. Defendant's counsel submitted an affidavit stating that petitioner had "refused to participate in the deposition, claiming that he was not ready," and that "similar to [petitioner's] refusal to proceed in his prior post-conviction proceeding, petitioner is refusing to participate in the current litigation of his claims."

In response, petitioner's counsel submitted an affidavit stating that, on the day of the deposition, petitioner had clarified one of his objections to the amended petition, causing counsel to conclude that he had misunderstood petitioner's position and that the petition should be amended. According to petitioner's counsel, petitioner wanted to delay the deposition to allow them more time to discuss amendments to the petition. Petitioner also contended that even if the court concluded that a discovery violation had occurred, dismissal "is not the appropriate sanction in this case," and that a lesser sanction, such as payment for the court reporter's time, should be imposed. Petitioner did not ask for any particular finding. Nor did he suggest to the court that a failure to make findings would amount to legal error.

At the hearing on the motion to dismiss, petitioner again stated that he needed to amend his petition. He also denied refusing to be deposed and stated that, "if [the assistant attorney general] would have deposed me[,] I would have proceeded."

The post-conviction court dismissed the petition with prejudice. The court found that petitioner "has delayed his own post conviction proceedings for almost two years. [Petitioner] had knowledge that refusal to participate in court proceedings could result in dismissal of his case. [Petitioner] chose not to participate in his deposition." The court explained that, although petitioner argued that he had not

refused to participate in his deposition, "the transcript, [petitioner's] attorney's statement, and [petitioner's] past history show that treating his request for further delay as a refusal is not unreasonable, and [is] well-founded under the circumstances."

On appeal, petitioner contends that the trial court erred in dismissing his petition. As a procedural matter, he argues that the court failed to make the findings required to support dismissal as a sanction.[1] With respect to the merits of the court's decision, petitioner contends that the court erred because dismissal was not warranted under the circumstances. Petitioner argues that, to begin with, he did not actually refuse to participate in the deposition, but simply requested more time, and that the court's finding to the contrary is not supported by evidence in the record. In any event, petitioner argues, even if the court was justified in construing his request for time as a refusal to participate in the deposition, its decision to impose the "ultimate sanction" and dismiss the case, as opposed to imposing some lesser sanction, was not justified. We conclude that (1) petitioner failed to preserve his argument that the court was required to make specific findings in support of its decision to dismiss the petition and (2) the court did not err in choosing dismissal as a sanction.

■　We begin with the question whether the post-conviction court erred by failing to make findings to explain why it was not imposing a lesser sanction. Petitioner argues that, under *Pamplin v. Victoria*, 319 Or 429, 877 P2d 1196 (1994), the trial court erred as a matter of law in imposing the sanction of dismissal without first making findings that lesser sanctions were not available or appropriate. Defendant responds that petitioner failed to preserve the argument. We agree with defendant.

---

[1] Petitioner actually "assigns error" (1) to the post-conviction court's finding that he refused to be deposed, (2) to the post-conviction court's failure to make findings that dismissal was the correct sanction, and (3) to the post-conviction court's order dismissing the complaint. Because the first two assignments of error merely address the analysis underlying the post-conviction court's ruling on defendant's motion to dismiss, the third assignment of error is the only proper assignment. *See* ORAP 5.45(3). Here, petitioner's noncompliance with that rule has not impeded our review of the pertinent ruling.

ORCP 46 D provides, in part, that if a party who has been served with proper notice fails to appear for his deposition, "the court in which the action is pending on motion may make such orders in regard to the failure as are just, including among others it may take any action authorized under subsection B(2)(a), (b), and (c) of this rule." ORCP 46 B(2) provides, in part:

"If a party * * * fails to obey an order to provide or permit discovery, * * * the court in which the action is pending may make such orders in regard to the failure as are just, including among others, the following:

"B(2)(a)   An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"B(2)(b)   An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the disobedient party from introducing designated matters in evidence;

"B(2)(c)   An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or any part thereof, or rendering a judgment by default against the disobedient party[.]"

In *Pamplin*, the Supreme Court held that a court that dismisses a case as a sanction under ORCP 46 B(2)(c) "must make findings of fact and must explain why that sanction is 'just'; that a finding of willfulness, bad faith, or fault of a similar degree on the part of the disobedient party is required; and that a finding of prejudice to the party seeking recovery is not required." 319 Or at 437. The court observed that, although a court ordinarily "may" make special or general findings in the absence of a request for special findings, "the sanction of dismissal under ORCP 46 B(2)(c) is a 'situation in which special findings are a prerequisite to meaningful review by an appellate court.'" *Id.* (quoting *Mattiza v. Foster*, 311 Or 1, 10, 803 P2d 723 (1990)).

In *SAIF v. Harris*, 161 Or App 1, 983 P2d 1066, *rev den*, 329 Or 527 (1999), however, we held that the special findings requirement recognized in *Pamplin* is subject to

basic rules of waiver and preservation. In *Harris*, the plaintiff moved for judgment against the defendant on the ground that the defendant had committed various discovery violations. The defendant did not respond to the motion, and the trial court entered judgment as the plaintiff requested. Nearly a year later, the defendant moved for relief on the ground that the trial court had neglected to make the findings required by *Pamplin*. The trial court denied relief.

We affirmed. We began by noting that *Pamplin* does require trial courts to set forth the rationale for the imposition of sanctions for discovery violations. We nevertheless concluded that the defendant was in no position to complain about the lack of findings at that late stage in the proceedings. We explained our reasoning in the following terms:

> "Rules regarding preservation generally require that an objection be raised earlier rather than later. *McEwen v. Ortho Pharmaceutical*, 270 Or 375, 421, 528 P2d 522 (1974). One of the policy reasons underlying such a rule of preservation is to ensure that the positions of the parties are presented clearly to the lower court and that parties are not denied the opportunity to meet a particular argument. *Davis v. O'Brien*, 320 Or 729, 737, 891 P2d 1307 (1995)."

*Harris*, 161 Or App at 10. We noted that to permit the defendant to raise the issue after the court had entered judgment "would * * * frustrate the above policies as well as the interest of the courts in the efficient use of their resources." *Id.* at 11.

In *Budden v. Dykstra*, 181 Or App 523, 47 P3d 49 (2002), we similarly concluded that arguments predicated on *Pamplin* are subject to ordinary rules of preservation. In that case, the plaintiff moved to compel production of documents and for sanctions for previous failures to comply with discovery requests. The trial court ordered the defendants to comply and further ordered that, if the documents were not timely produced, it would strike an affirmative defense. When the defendants did not comply, the trial court entered an order striking the defense. The defendants then filed a motion for reconsideration, asking the court to impose a lesser sanction. The trial court denied the motion, and the defendants appealed.

On appeal, the defendants argued that the trial court's order striking the affirmative defense ran afoul of *Pamplin*'s finding requirement. We concluded that the defendants had failed to preserve that argument. Citing *Harris*, we noted that the trial court "cannot be faulted for failing to make such findings if no one requested them." *Budden*, 181 Or App at 528. We noted that, in *Harris*, we had emphasized the policy reasons that underlie the rule of preservation, including ensuring that the positions of the parties are presented clearly to the lower court and the need to give the trial courts a fair opportunity to avoid the error. "So also in this case," we continued, the "defendants failed to argue to the trial court that *Pamplin* required it to make any particular findings. If they had but done that, the court could either have made the appropriate findings or imposed different sanctions." *Id.*

The defendants in *Budden* insisted that they had done so in their motion for reconsideration. We responded that, even assuming that an issue may be raised for the first time on reconsideration, the defendants' motion "merely asked the court for a lesser sanction. It said nothing about the law requiring the court to make any particular findings." *Id.* at 528-29. Accordingly, we concluded that the defendants failed to preserve their contention that the trial court had erred in failing to make appropriate findings. *Id.*

*Harris* and *Budden* are squarely controlling here. In response to petitioner's refusal to participate in discovery, defendant moved to dismiss. Petitioner opposed the motion, arguing that (among other things) "dismissal is not the appropriate sanction in this case." Nowhere in petitioner's opposition papers or in his argument to the trial court, however, is there any mention of the need for any particular findings. Nowhere is there the remotest suggestion that the trial court would commit legal error in failing to make them.

This case thus presents the very problems that we found so troubling in *Harris* and *Budden*—in particular, the fact that the trial court could have addressed the *Pamplin* issue had the parties timely raised it. If petitioner in this case had argued that *Pamplin* requires the court to make explicit findings as to the availability of lesser sanctions, the

court would have been given a fair opportunity to avoid error. We conclude that petitioner failed to preserve the argument that the trial court was required to make explicit findings as to the availability of lesser sanctions.

The dissent contends that our reliance on *Harris* is misplaced and that *Budden* was incorrect in suggesting that the rules of preservation apply to the requirement that trial courts must make findings before imposing the sanction of dismissal. According to the dissent, *Harris* stands for the limited proposition that the requirement may be waived. As we have noted, however, *Harris* explicitly relied on principles of preservation and "the policy reasons underlying such a rule of preservation." 161 Or App at 10. We relied on the same rationale in *Budden*, in noting that among the important rationales for the rule of preservation is providing the trial court with an opportunity to avoid error. *Budden*, 181 Or App at 528.

The dissent acknowledges that, in this case, the post-conviction court would have had an opportunity to avoid error if petitioner had requested findings. Nevertheless, it insists that merely by failing to ask for findings, petitioner "cannot be said to have waived" his right to raise the issue now. Our own rules are to the contrary. *See* ORAP 13.10(7) ("A party's failure to request findings in a petition, objection, or reply * * * constitutes a waiver of any objection to the absence of findings to support the court's decision.").

We turn to the merits of the court's decision. As we have noted, petitioner argues that dismissal was improper because he did not actually refuse to be deposed and because, in any event, dismissal was too harsh a sanction and the court was obliged to impose a lesser sanction, "such as payment [for] the court reporter's time."

We review the merits of the post-conviction court's decision to dismiss for an abuse of discretion. *Phan v. Morrow*, 185 Or App 628, 633, 60 P3d 1111 (2003). We review the post-conviction court's factual findings to determine if they are supported by evidence in the record. *Gable v. State of Oregon*, 203 Or App 710, 712, 126 P3d 739, *rev den*, 341 Or 216 (2006).

The trial court's finding that petitioner's request for more time constituted a refusal to be deposed on the date scheduled is supported by evidence in the record. Petitioner acknowledged at the deposition that he did "not feel ready to be deposed" and wanted to postpone. Moreover, the post-conviction court viewed petitioner's conduct in the context of his having "delayed his own post conviction proceedings for almost two years." The court's view of petitioner's conduct likewise is supported by the record: petitioner filed his first petition for post-conviction relief in January 2002 and, after refusing to proceed to trial because of dissatisfaction with the pleadings in his first action, he refused to be deposed as scheduled in his refiled action in May 2004, more than two years later, on the ground that he was still dissatisfied with the content of his operative petition. The post-conviction court could infer that petitioner had had ample time to amend his petition and that he was intentionally causing needless delay. Indeed, at the hearing on defendant's motion to dismiss, when petitioner complained that he was trying to get his petition amended, the court noted that petitioner had "had several opportunities to do that." Accordingly, we conclude that the record contains adequate support for the post-conviction court's findings regarding the willfulness of petitioner's conduct. Moreover, in light of its findings that petitioner was willfully attempting to delay the proceedings, and had been doing so for nearly two years, the court's decision to dismiss the petition was not an abuse of discretion.

Affirmed.

**ORTEGA, P. J.**, dissenting.

I agree with the majority's analysis, except regarding preservation of the issue of findings in support of the sanction of dismissal. In my view, requiring a sanctioned party not only to raise the issue of the appropriate sanction but also to request findings on that issue, as the majority does, is inconsistent with the Supreme Court's interpretation of ORCP 46. Accordingly, I would hold that the post-conviction court erred by failing to make findings indicating why dismissal, rather than a lesser sanction, was required and would remand for the court to make findings.

In *Pamplin v. Victoria*, 319 Or 429, 437, 877 P2d 1196 (1994), the Supreme Court noted the impossibility of assessing the propriety of dismissal as a sanction under ORCP 46 B without knowing both the facts on which the trial court based its decision and the "analytical process" through which the trial court decided that dismissal, not some lesser sanction, was appropriate. The court explained:

> "In a similar context, this court has noted the importance of findings for 'meaningful review by an appellate court.' *Mattiza v. Foster*, 311 Or 1, 10, 803 P2d 723 (1990). *Mattiza* involved an award of attorney fees under ORS 20.105(1). Although that statute does not expressly require findings, this court held that findings are required, reasoning:
>
>> " 'Although, in the absence of a request for special findings by one of the parties, the court "may" make special or general findings, ORCP 62 A, the award of attorney fees under ORS 20.105(1) is a situation in which special findings are a prerequisite to meaningful review by an appellate court.' 311 Or at 10 (citations omitted).
>
> "Here, as in *Mattiza*, the sanction of dismissal under ORCP 46 B(2)(c) is a 'situation in which special findings are a prerequisite to meaningful review by an appellate court.' * * * To assess the propriety of imposing that sanction, an appellate court needs to know (1) the historical facts on which the trial court based its decision to impose it and (2) the analytical process by which the trial court concluded that dismissal is 'just' in view of those facts and in view of the other sanctions that are available."

319 Or at 436-37 (footnote omitted). *Pamplin* thus distinguished cases in which, unless findings are requested, a trial court "may" make findings. In cases such as this, the court *must* make findings, even in the absence of a request for findings.

In *SAIF v. Harris*, 161 Or App 1, 11, 983 P2d 1066, *rev den*, 329 Or 527 (1999), we identified an exception to the general rule of *Pamplin*: we concluded that a sanctioned party had waived the right to have the trial court consider lesser sanctions. The majority reads *Harris* differently, stating that "we held that the special findings requirement recognized in *Pamplin* is subject to basic rules of waiver and

preservation." 209 Or App at 23-24. However, although *Harris* referred to preservation principles in support of its analysis, the holding was phrased in terms of waiver: "We conclude that, by her delay, defendant has waived the right to raise the issue on appeal that the trial court failed to consider less severe sanctions and that it failed to make a finding of 'willfulness' in the order of default." 161 Or App at 11.

Framing the issue as waiver, not simply preservation, was deliberate. (And, if *Harris* had been simply a preservation case, surely we could have saved a good deal of discussion by saying as much.) We explained in *Harris* that a line of earlier cases, all requiring remand for findings,

"were predicated on the concept that to allow for meaningful review of the *sanction*, the trial court should have the first opportunity to decide, under the proper criteria, what is an appropriate sanction. Here, we do not reach that issue because as we discuss later, defendant has waived her right to require the trial court to undertake that consideration."

*Id.* at 10 n 13 (emphasis in original). In other words, *Harris* concluded that, if a party properly raises the issue of sanctions, then the trial court must make findings about the appropriate sanction. That conclusion is consistent with *Pamplin*, and it gives no support to the idea that a sanctioned party must specifically request findings.

Subsequently, in *Budden v. Dykstra,* 181 Or App 523, 47 P3d 49 (2002), we treated *Harris* as requiring preservation of a request for findings, rather than being based on the sanctioned party's waiver of any objection to the sanction. In so doing, *Budden* went astray from the principles of *Pamplin* and *Harris*.[1] The statement in *Budden* that a sanctioned party must request findings regarding the propriety of a lesser sanction cannot, in my view, be squared with

---

[1] The result in *Budden* was nevertheless correct, because the sanctioned party's conduct was consistent with the conduct in *Harris* that constituted waiver of review of the sanction itself. In *Budden*, as in *Harris*, the sanctioned party did not make any argument that lesser sanctions were appropriate until well after the sanctions were imposed. *Budden*, 181 Or App at 528 (issue of lesser sanctions not raised until a month after sanctions were imposed); *Harris*, 161 Or App at 10-11 (issue of lesser sanctions not raised until nearly a year after sanctions were imposed). Moreover, in *Budden*, the issue of lesser sanctions was raised only by a motion for reconsideration, a motion of questionable status. 181 Or App at 528.

*Pamplin*'s statements that, regardless of whether a request for findings is made, "special findings are a prerequisite to meaningful review by an appellate court." 319 Or at 436 (internal quotation marks omitted).

Here, petitioner raised in the post-conviction court the issue of the appropriate sanction. In opposition to defendant's motion to dismiss, he contended that dismissal was too severe a sanction and that, if the court concluded that he had refused to be deposed, a lesser sanction should be considered. The majority is correct that, if petitioner had requested findings, the post-conviction court would have had an opportunity to avoid its failure to make findings—although that lack of findings leaves us unable to meaningfully review and identify any error regarding the sanction itself. 209 Or App at 25-26. Nevertheless, petitioner cannot be said to have waived his right to appellate review of imposition of the sanction, and *Pamplin* instructs us that findings regarding the propriety of the *sanction* are a prerequisite to meaningful appellate review, regardless of whether findings have been requested. 319 Or at 436. Accordingly, I would remand to allow the post-conviction court to make findings regarding whether lesser sanctions would suffice.

I respectfully dissent.