Argued and submitted September 5, 2007, decision of Court of Appeals and
judgment of circuit court affirmed August 14, 2008

JASON J. PEEPLES,
*Petitioner on Review,*

*v.*

Robert LAMPERT,
Superintendent,
Snake River Correctional Institution,
*Respondent on Review.*

(CC 02011658M, CA A122837 (Control))

JASON J. PEEPLES,
*Petitioner on Review,*

*v.*

Brian BELLEQUE,
Superintendent,
Oregon State Penitentiary,
*Respondent on Review.*

(CC03C-21423; CA A125027; SC S054437)

191 P3d 637

Patrick M. Ebbett, Chilton, Ebbett & Galli, LLC, Portland, argued the cause and filed the briefs for petitioner on review.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondents on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Walter J. Ledesma, Woodburn, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

LINDER, J.

Durham, J., concurred and filed an opinion in which Gillette, J., joined.

**LINDER, J.**

In this post-conviction case, the trial court dismissed the petition for relief as a sanction for petitioner's refusal to participate in a scheduled deposition. On appeal, petitioner argued that the trial court erred by failing to make special findings to support the dismissal, as required by *Pamplin v. Victoria*, 319 Or 429, 877 P2d 1196 (1994). A panel of the Court of Appeals divided on whether that challenge must be preserved to be raised on appeal. *Peeples v. Lampert*, 209 Or App 17, 25-26, 146 P3d 352 (2006) (preservation rules apply); *id.* at 29-30 (Ortega, J., dissenting) (under *Pamplin*, no request for special findings is required). Petitioner sought review, which we allowed. We now hold that a challenge to a trial court's failure to make the special findings required by *Pamplin* is subject to preservation rules. Because petitioner did not preserve that challenge in this case, we affirm.

The pertinent facts are procedural in nature. After pleading guilty to two criminal offenses, petitioner filed a first *pro se* petition for post-conviction relief in Malheur County. An attorney was appointed to represent him, and that attorney, about nine months after the original petition was filed, filed an amended petition for post-conviction relief. Trial then was scheduled for a year after that. On the day of trial, petitioner asked to amend his petition, to have a new attorney appointed to represent him, and to have the case continued for further investigation. The post-conviction court denied those requests. When petitioner refused to proceed, the court dismissed the case without prejudice.

About two months after that dismissal, petitioner filed a second *pro se* petition for post-conviction relief, this time in Marion County. An attorney was again appointed to represent him, and that attorney filed an amended petition. Petitioner expressed concerns to his counsel about allegations that were in his original *pro se* petition but were not included in the amended petition. His counsel, after corresponding with petitioner, decided not to restore any of those allegations. Meanwhile, the state scheduled petitioner's deposition.[1] Although petitioner and his counsel came to the

---

[1] When a petitioner seeking post-conviction relief is imprisoned in a state institution, as is petitioner in this case, the defendant in the proceeding is the state

scheduled deposition, petitioner refused to be deposed, claiming that he was not ready to proceed. The state moved to dismiss the petition as a sanction for petitioner's refusal. *See* ORCP 46 D (authorizing sanctions for party's failure to appear at own deposition); ORCP 46 B (enumerating possible sanctions, including "an order * * * dismissing the action"). Alternatively, the state asked that petitioner be required to pay all costs that the state had incurred due to petitioner's refusal to be deposed.

Both parties submitted affidavits and other evidence in the hearing on the state's motion to dismiss. Counsel for the state, who also had represented the state in the Malheur County action, by affidavit described petitioner's unwillingness in that case to proceed and his day-of-trial efforts to amend his petition, which had been previously amended and had been awaiting trial for a year. The state took the position that petitioner's refusal to be deposed in the Marion County action was unreasonable and that petitioner was delaying that proceeding in the same way that he had delayed the Malheur County proceeding.

In opposition to the motion to dismiss, petitioner disputed that he had refused to be deposed. In the written memorandum opposing dismissal, petitioner's counsel urged that, even if the post-conviction court found that petitioner had refused to be deposed, dismissal as a sanction was not warranted. As an alternative, he suggested that petitioner be required to pay only the cost of the three-page transcript of the terminated deposition. Petitioner's written opposition was supported by an affidavit from his counsel representing that, on the day of the deposition, petitioner had clarified his objections to the amended petition for post-conviction relief, which caused counsel to reconsider a possible amendment to the petition. Petitioner's counsel asserted that petitioner had wanted the deposition postponed.

At the hearing on the motion, petitioner likewise told the court that he wanted to get his petition amended, and was not refusing to be deposed. In particular, petitioner

_____

official charged with the petitioner's confinement. ORS 138.570. For ease of reference and clarity, we refer to the defendants in petitioner's Malheur County and Marion County proceedings as "the state."

personally represented to the post-conviction court that, at the time of the scheduled deposition, he had "no problem being deposed" and that, if the state's attorney had deposed him at that time, he would have cooperated. The transcript of the terminated deposition, however, was also before the post-conviction court. In it, petitioner had affirmatively confirmed his attorney's representation that petitioner was not ready to be deposed and that he wanted the deposition rescheduled for another time. Petitioner's counsel acknowledged to the post-conviction court that petitioner's dissatisfaction with the claims pleaded in the amended petition might "sound familiar, given the prior proceeding [in Malheur County]." Neither counsel nor petitioner identified what claims or allegations might be added to the amended petition.

The post-conviction court dismissed the petition with prejudice. At the conclusion of the hearing, the court orally observed that petitioner had many opportunities, during the two years after filing his first post-conviction petition in Malheur County, to amend his petition. The court concluded that petitioner was unwilling to participate and was "wast[ing]" the court's time. The court directed the state to prepare the judgment dismissing the action. In that judgment, the court made the following findings:

> "The court finds that plaintiff's post-conviction claims were originally filed in Malheur County, Oregon[,] [o]n September 23, 2002. [That] petition was dismissed without prejudice on September 23, 2003[,] in Malheur County, Oregon, because plaintiff refused to proceed at the date set for his trial. Plaintiff apparently was not satisfied with the claims set forth in his amended petition.

> "Plaintiff then filed this petition for post conviction relief on November 4, 2003. An amended petition was filed on February 23, 2004.

> "On May 7, 2004, plaintiff again expressed that [he] was not satisfied with the claims set forth in his amended petition, and refused to participate in his deposition.

> "Plaintiff has delayed his own post conviction proceedings for almost two years. Plaintiff had knowledge that refusal to participate in court proceedings could result in dismissal of his case. Plaintiff chose not to participate in his deposition.

"For these reasons and those set forth by the defendant, defendant's Motion to Dismiss for Lack of Prosecution is allowed. Because of plaintiff's history of delay in this matter and the same underlying matter in the Malheur County Circuit Court, the Petition for Post Conviction Relief is dismissed with prejudice."

By way of footnote, the post-conviction court explained why it found that petitioner "chose not to participate in his deposition":

"While [petitioner] stated at this hearing that he did not refuse, the transcript, plaintiff's attorney's statement, and plaintiff's past history show that treating his request for further delay as a refusal is not unreasonable, and well-founded under the circumstances."

On appeal to the Court of Appeals, petitioner argued that, procedurally, the post-conviction court had failed to make the findings that *Pamplin* identified as necessary for meaningful appellate review. In particular, petitioner contended that the post-conviction court was required to explain expressly why lesser sanctions were not appropriate. As noted earlier, the Court of Appeals panel divided on whether petitioner had to preserve that issue. Two members of the three-judge panel concluded that he was required to do so; one judge would have held that preservation rules did not apply to the findings required by *Pamplin*. *Peeples*, 209 Or App at 23-26 (majority); *id.* at 27-30 (Ortega, J., dissenting). We allowed review to resolve that issue.

■ We begin by examining the legal authority for the post-conviction court's dismissal of the petition for post-conviction relief and the court's obligation to make findings in support of that action. Under ORCP 46 D, if a party fails to cooperate in a properly scheduled deposition, a trial court may sanction the party by "mak[ing] such orders in regard to the failure as are just[.]"[2] Among the orders that the rule specifically authorizes is dismissal of the action, pursuant to

_____

[2] ORCP 46 D provides, in part:

"If a party * * * fails * * * to appear before the officer who is to take the deposition of that party * * *, after being served with a proper notice, * * * the court in which the action is pending on motion may make such orders in regard to the failure as are just, including among others it may take any action authorized under subsection B(2)(a), (b), and (c) of this rule. In lieu of any order or in addition thereto, the court shall require the party failing to act or the

ORCP 46 B(2)(c).[3] In *Pamplin*, this court held that, for dismissal under ORCP 46 B(2)(c) to be "just," an uncooperative party must act with "willfulness, bad faith, or fault of a similar degree on the part of the disobedient party." 319 Or at 434. This court further held that, to support a sanction of dismissal, a trial court must make specific findings resolving any factual disputes and explaining why such a sanction is warranted. *Id.* at 436-37.[4]

In so holding, this court determined that dismissal as a sanction under ORCP 46 B(2)(c) is analogous to awarding attorney fees as a sanction under ORS 20.105(1). 319 Or at 436. Pursuant to that statute, a trial court has discretion to impose such fees in appropriate circumstances in civil proceedings. The statute does not expressly require a court to make special findings in support of the award.[5] Nevertheless, in *Mattiza v. Foster*, 311 Or 1, 10, 803 P2d 723 (1990), this court held that a court must make such findings, reasoning that they are necessary for meaningful appellate review of an

---

attorney advising such party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."

[3] In particular, ORCP 46 D specifically cross-references the "action[s] authorized under subsection B(2)(a), (b), and (c)," which are:

"B(2)(a) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"B(2)(b) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the disobedient party from introducing designated matters in evidence; [or]

"B(2)(c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or any part thereof, or rendering a judgment by default against the disobedient party[.]"

[4] *Pamplin* arose under ORCP 46 B, which addresses a trial court's authority to sanction noncompliance with a discovery order. This case arises under ORCP 46 D, which controls the court's authority to sanction noncooperation with a scheduled deposition. The operative wording of the two provisions is the same, however. In both circumstances, the court may "make such orders in regard to the failure as are just" and specifically may dismiss the action pursuant to ORCP 46 B(2)(c). Given those parallels, *Pamplin*'s rationale applies equally to a trial court's dismissal authority under ORCP 46 D. Neither party, we note, urges us to hold otherwise.

[5] When this court decided *Pamplin*, ORS 20.105(1) gave trial and appellate courts authority, in civil proceedings, to award reasonable attorney fees against a party who has " 'willfully disobeyed a court order or acted in bad faith, wantonly, or solely for oppressive reasons.' " 319 Or at 436 n 4 (quoting statute).

award under ORS 20.105(1). *Pamplin* relied on *Mattiza* in concluding that special findings likewise should be necessary when a trial court dismisses an action under ORCP 46 B(2)(c):

"Here, as in *Mattiza*, the sanction of dismissal under ORCP 46 B(2)(c) is a situation in which special findings are a prerequisite to meaningful review by an appellate court. As discussed above, that sanction is appropriate only when it is 'just' and only when there is willfulness, bad faith, or other fault of like magnitude by the disobedient party. To assess the propriety of imposing that sanction, an appellate court needs to know (1) the historical facts on which the trial court based its decision to impose it and (2) the analytical process by which the trial court concluded that dismissal is 'just' in view of those facts and in view of the other sanctions that are available. The present case provides a classic example of the difficulty of meaningful appellate review, because of the unresolved factual questions in the record."

319 Or at 436-37 (internal quotation marks omitted; citation omitted).

In this case, in opposing the state's motion to dismiss, petitioner disputed whether he in fact had refused to be deposed. He also disputed whether dismissal was an appropriate sanction for his conduct. In the written judgment, the post-conviction court set forth an explanation, together with findings, for its dismissal of the action. The court found that petitioner had refused to be deposed, thus resolving that factual dispute. The court further found that petitioner did so with knowledge that his refusal to proceed could result in a dismissal, as it had in Malheur County; that petitioner had delayed his post-conviction proceeding for almost two years; and that dismissal with prejudice was appropriate because of petitioner's "history of delay in this matter and the same underlying matter in * * * Malheur County[.]" The post-conviction court did not, however, explain—at least not *explicitly*—why dismissal, rather than a lesser sanction, was appropriate in those circumstances.

On appeal, petitioner assigned error not only to the post-conviction court's *substantive* decision to dismiss, but

also to the court's *procedural* failure to make an express special finding that dismissal was more appropriate than a lesser sanction. Petitioner raised that claim of error on appeal even though he had not argued to the post-conviction court that it was obligated to make an explicit finding in that regard. Nor had he argued that the findings that the post-conviction court did make were otherwise inadequate. Petitioner did not present those concerns to the post-conviction court, even though—as we describe in greater detail later in this opinion—he had an opportunity to do so.

Thus, petitioner preserved whether, as a *substantive* matter, a sanction of dismissal was warranted, but he did not preserve his argument that the post-conviction court was obligated, as a *procedural* matter, to make additional or more specific findings than it made in explaining its ruling. Petitioner's failure to preserve that procedural issue is undisputed. What is disputed is whether rules of preservation should apply to a claim that the trial court failed to make special findings as required by *Pamplin*.

Preservation was not an issue in *Pamplin*. Nor was it an issue in *Mattiza*, on which *Pamplin* relied.[6] In concluding that ordinary rules of preservation should apply to such a challenge, the Court of Appeals' majority examined the policy reasons that underlie preservation rules and determined, in essence, that those policies would be ill-served if a party has no obligation to object to a failure to make findings that the party believes are necessary to support dismissal. *Peeples*, 209 Or App at 24-26. In reaching the opposite conclusion, the dissent viewed it as inconsistent with *Pamplin* to require petitioner to request special findings to ensure meaningful review of his substantive challenge, given that he had otherwise preserved that challenge by arguing that a lesser sanction should be imposed. *Id.* at 30 (Ortega, J., dissenting). On

---

[6] The concurrence asserts that preservation was raised in the briefing in *Pamplin*. 345 Or at 232 (Durham, J., concurring). We disagree. The defendant in *Pamplin* summarily argued that a court is under no *legal obligation* to make special findings, except pursuant to the procedures set forth in ORCP 62, which the plaintiff had not followed. Plaintiff responded only by urging that ORCP 62 applied to bench trials only and therefore was inapplicable in that case. The parties' dispute thus was over the existence of a legal obligation to make findings; neither party framed the point as a disagreement over the applicability of preservation rules for purposes of appellate review.

review, the parties' arguments to this court similarly reflect competing views of how to reconcile the policies favoring preservation with *Pamplin*'s requirement of express special findings as a way to facilitate meaningful review of a dismissal under ORCP 46 B(2)(c). We turn to that inquiry.

The general requirement that an issue, to be raised and considered on appeal, ordinarily must first be presented to the trial court is well-settled in our jurisprudence. *See, e.g., State v. Laundy*, 103 Or 443, 509-10, 206 P 290 (1922) (identifying preservation rule; citing earlier cases). For some years, the requirement also has been part of Oregon's Rules of Appellate Procedure, which provide that "[n]o matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court[.]" ORAP 5.45(1). The principal exception to preservation requirements is for so-called "plain error"—that is, an error apparent on the record, about which there is no reasonable dispute. *See, e.g., State v. Brown*, 310 Or 347, 355-56, 800 P2d 259 (1990) (describing plain error). An appellate court has discretion to consider such an error, but it must do so with the "utmost caution," because of the strong policy reasons favoring preservation. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991) (identifying procedure and bases for consideration of plain error).

Those policies are prudential in nature. Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal. *See Shields v. Campbell*, 277 Or 71, 77, 559 P2d 1275 (1977) ("A party owes the trial court the obligation of a sound, clear and articulate motion, objection or exception, so as to permit the trial judge a chance to consider the legal contention or to correct an error already made."). Preservation also ensures fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise. *Davis v. O'Brien*, 320 Or 729, 737-38, 891 P2d 1307 (1995) (preservation ensures that "the positions of the parties are presented clearly to the initial tribunal and that parties are not taken by surprise, misled, or denied opportunities to meet an argument"). Finally, preservation fosters full development of the

record, which aids the trial court in making a decision and the appellate court in reviewing it. *See Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 659-60, 20 P3d 180 (2001) (to promote judicial efficiency, unpreserved alternative ground for affirmance may be raised on appeal when, among other considerations, record has been fully developed). Our jurisprudence, thus, has embraced the preservation requirement, "[not] to promote form over substance but to promote an efficient administration of justice and the saving of judicial time." *Shields,* 277 Or at 77-78.

■    Preservation rules are pragmatic as well as prudential. What is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court. *See generally State v. Hitz,* 307 Or 183, 188, 766 P2d 373 (1988) (distinguishing requirements for "raising an issue at trial, identifying a source for a claimed position, and making a particular argument"). In some circumstances, the preservation requirement gives way entirely, as when a party has no practical ability to raise an issue. *See, e.g., McCarthy v. Oregon Freeze Dry, Inc.,* 327 Or 84, 95 n 6, 957 P2d 1200, *modified on recons,* 327 Or 185, 957 P2d 1200 (1998) (party not required to take action to preserve an issue that first arose when court issued its order).[7] The same is true if the record establishes that preservation would have been futile, because the trial court would not have permitted an issue to be raised or the record to be developed. *See, e.g., State v. Olmstead,* 310 Or 455, 461, 800 P2d 277 (1990) ("When the trial court excludes an entire class of evidence by declaring, in advance, that it is inadmissible as a matter of law, the ruling renders a further offer futile."). Finally, a legal right may not be subject to preservation requirements due to the unique nature of the right itself. *See, e.g., State v. Barber,* 343

---

[7] The circumstances presented in *State v. DeCamp,* 158 Or App 238, 241, 973 P2d 922 (1999) provide another example of when preservation can be a practical impossibility. There, the trial court modified a criminal defendant's sentence without giving either party notice and without a hearing in which the parties were present. The Court of Appeals held that, under those circumstances, the defendant could challenge the modification on appeal without first preserving the issue before the trial court.

Or 525, 530, 173 P3d 827 (2007) (unique wording of constitutional requirement of written jury trial waiver precluded ordinary rules of preservation for claim relating to denial of jury trial right).

We have not, however, foregone preservation requirements in contexts involving mandatory trial court findings. In *State v. Bucholz*, 317 Or 309, 855 P2d 1100 (1993), this court required preservation of a claim that a trial court had erred in failing to make special findings. In that case, the defendant challenged the trial court's failure to make express findings in imposing consecutive sentences on his convictions. Without deciding whether the trial court had a statutory obligation to make such findings,[8] this court declined to reach the issue for lack of preservation, reasoning that the defendant was aware that the sentences were being imposed consecutively, but he neither objected to the lack of findings nor requested findings to be made. *Id.* at 320. Citing ORAP 5.45(2), this court declared that "silence provides no basis for considering a claim of error on later appeal" and observed that the defendant sought relief on appeal for an error that, had it been brought to the trial court's attention, could easily have been remedied. *Id.* at 320-21.[9]

Similarly, in *McCarthy*, which was decided after *Matizza*, this court assumed that preservation requirements apply to the special findings that a court must make in

[8] The issue arose under ORS 137.123(4) (1989) (currently ORS 137.123(5)), which gives a trial court "discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds" certain facts prescribed by the statute. The Court of Appeals previously had held that, to satisfy the statute, a trial court must expressly make special findings at the time the consecutive sentences are imposed pursuant to that statute. *State v. Racicot*, 106 Or App 557, 809 P2d 726 (1991).

[9] Petitioner attempts to distinguish *Bucholz*, urging that the statutory findings involved in that case did not "implicate" an appellate court's ability to meaningfully review the sentence imposed. As we have observed, however, express trial court findings are *always* helpful to appellate review. *See, e.g., State v. Hart*, 329 Or 140, 148, 985 P2d 1260 (1999) (trial courts are encouraged to state findings on the record, which "always are useful and, on occasion, could even be critical" to appellate review). When the legislature requires trial courts to make express findings, and further provides for appellate review of the decision made, we properly may presume that the legislature does so, at least in part, to facilitate appellate review.

imposing a discretionary award of attorney fees.[10] The court held, as it had in *Matizza*, that a court making such an award must explain the basis for its award "through special findings of fact or otherwise[.]" 327 Or at 95. In so holding, this court noted that plaintiff had raised his challenge to the Court of Appeals' failure to make special findings for the first time in the petition for review. *Id.* at 95 n 6. The court concluded, however, that plaintiff "was not required to take action to preserve that issue below, because it arose when the Court of Appeals issued its order." *Id.* In other words, *McCarthy* did not declare that the issue was not subject to preservation requirements. The court determined instead that, under the circumstances, the plaintiff did not have an adequate opportunity to raise the deficiency in the findings to the Court of Appeals and, for that reason, he did not have to do so.[11]

In light of our prior decisions and with the policy reasons for rules of preservation in mind, we conclude that there is no principled basis to abandon preservation requirements in this context. Requiring a party to alert a trial court to its failure to make special findings that are material to the decision, given the issues framed by the parties, serves the salutary purpose of permitting the trial court to avoid making an error or to correct an error already made. The policies of

---

[10] In *McCarthy*, this court considered a trial court's authority to impose a discretionary award of attorney fees pursuant to ORS 20.075(1), which the court deemed to be "analogous" to the awards under ORS 20.105(1) that concerned the court in *Matizza*. 327 Or at 95. ORS 20.075(1) sets forth factors that a trial or appellate court must consider whenever a statute gives a court discretion to award attorney fees. The factors include considerations relevant to the conduct of the parties in the case, the merit or frivolousness of their claims, and the effect of an award on others who might assert good faith claims in similar cases. *See* ORS 20.075 (1)(a) - (h) (enumerating factors). If the court decides to grant an award of attorney fees, the court considers those same factors, in addition to others, in determining the amount of the award. *See* ORS 20.075(2) (so stating).

[11] Indeed, after *Matizza* was decided, both this court and the legislature adopted express preservation requirements for the special findings that *Mattiza* held are required. *See* ORAP 13.10(7) (party may "request findings regarding the facts and legal criteria that relate to any claim or objection concerning attorney fees"; request must be in the caption of the petition, objection, or reply filed by the party; failure to request findings is a waiver of objection to the absence of findings to support the decision); ORCP 68 C(4)(e) (on a party's request, a trial court "shall make special findings of fact and state its conclusions of law on the record regarding the issues material to the award or denial of attorney fees"; request must be in the title of the statement supporting the award or the objection to it; in the absence of a request, court may make either general or special findings).

using judicial resources efficiently and not blindsiding a trial court are strong ones that underlie preservation requirements in other contexts. Those policies are no less strong here.

Requiring preservation in this context also is fair to opposing counsel. It may be, as petitioner argues, that the party moving for dismissal has no interest in opposing special findings. But the moving party does have an interest in ensuring that the record is adequately developed, and in avoiding an unnecessary remand for proceedings that could have been conducted before the appeal.[12]

Finally, requiring preservation in this context is consistent with our holding in *Pamplin*. Preservation serves the twin goals of ensuring procedural fairness and judicial efficiency. The findings required by *Pamplin* facilitate meaningful review. Those objectives are complementary. A party that does not preserve an issue, when it is reasonably possible to do so, is not entitled to appellate review of it, meaningful or otherwise. Said another way, in any number of circumstances, a party's very *right* to appellate review of an issue is that party's to preserve or lose. Requiring a party to take reasonable steps to ensure that such review is meaningful is consistent with, rather than contrary to, *Pamplin*.

We therefore hold that the usual rules of preservation apply to a challenge to a trial court's failure to make express special findings required by *Pamplin*. We further conclude that petitioner failed to preserve that challenge in this case. The post-conviction court expressly resolved the factual dispute presented—*i.e.*, whether petitioner refused to

---

[12] This case illustrates that point. Here, petitioner argued in his written memorandum that dismissal, rather than a lesser sanction, was not warranted. On that point, he summarily urged that he should be required to pay for the three-page cost of the deposition transcript (as opposed to what defendant proposed as an alternative, which was to bear defendant's full costs of the terminated deposition). At the hearing on the motion to dismiss, however, petitioner did not argue the point. Nor did he present any evidence (*e.g.*, his financial circumstances) as to how a lesser sanction would deter him from the dilatory tactics he had engaged in for the past two years. Had petitioner put the state as well as the post-conviction court on notice of his position that a special finding on the point was required, the record and the parties' arguments to the post-conviction court likely would have addressed the issue directly.

be deposed—and explained why dismissal was warranted. But the court did not explain or make findings directed to the "analytical process" by which it concluded that a lesser sanction would not do, as *Pamplin* held is required. 319 Or at 436-37. Petitioner did nothing to call that omission to the post-conviction court's attention, however. That is true even though petitioner had at least two opportunities to do so. First, petitioner could have requested special findings pursuant to *Pamplin*, either by noting the request in his written submission in advance of the hearing, or by orally asking the court to make special findings at the outset of the hearing. *Pamplin* is settled case law, and a generic request for findings pursuant to *Pamplin*, given the substantive issues framed by petitioner's opposition to the motion to dismiss, would have sufficed to place the post-conviction court on notice of the need to make the omitted finding. Petitioner's second opportunity to preserve the issue came when he was served with the proposed judgment by the state. At that point, before judgment was entered, petitioner could have objected to the absence of a finding or other explanation as to why a lesser sanction would not suffice.[13]

In holding that the usual rules of preservation apply to a challenge to a trial court's failure to make the express special findings required by *Pamplin*, we emphasize that nonpreservation of that issue precludes only a *procedural* challenge to the failure to make one or more special findings; it does not preclude review of a *substantive* challenge to the merits of the dismissal, if that challenge is preserved, as it was in this case. The Court of Appeals therefore properly reached the merits of petitioner's argument that dismissal

---

[13] That opportunity arose pursuant to UTCR 5.100(1). At the conclusion of the hearing, as earlier noted, the post-conviction court directed the state to prepare the judgment. Under UTCR 5.100(1), the state was obligated to serve the proposed judgment on petitioner's counsel not less than three days before submitting it to the court, unless petitioner's counsel stipulated that he had no objections to the judgment or unless it was presented in open court with all parties present. Implicit within that provision is the other party's ability to raise objections to the form of the judgment in the time period before it is entered, which could encompass an objection to a missing finding. Nothing in the record suggests that the state did not comply with its obligation to serve the petitioner with a copy of the proposed form of judgment. Nor has petitioner argued in this case that preservation was not possible.

was too harsh a sanction, while properly declining to consider, as an independent claim of error, petitioner's challenge to the lack of a finding that dismissal was warranted. *Peeples*, 209 Or App at 26-27.[14]

Finally, we again emphasize the importance of special findings to meaningful appellate review of a dismissal under ORCP 46 B(2)(c). Dismissal with prejudice is the "ultimate sanction" that a trial court may impose. The special findings that *Pamplin* enjoins are of particular assistance to an appellate court's review of a trial court's exercise of discretion in imposing that sanction. In some cases, as happened in this case, incomplete findings, together with an adequately developed record, may provide a minimally adequate basis for a reviewing court to consider the merits of the trial court's exercise of discretion in ordering the dismissal. But that will not always be true. As a result, both the moving party and the trial court run the risk that, without special findings, the appellate court will not be able to conclude that dismissal as a sanction is warranted. *See, e.g., Seely v. Hanson,* 317 Or 476, 483-84, 857 P2d 121 (1993) (unaided by specific findings, court was unable to conclude that attorney fee award under ORS 20.105(1) was warranted). Because of the value of special findings in reviewing a dismissal decision, all participants in that decision—the moving party, the opposing party, and the trial court—have an interest in ensuring that the requisite findings are made.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**DURHAM, J.,** concurring.

The majority concludes that the Court of Appeals correctly declined to review petitioner's argument that the trial court had failed to make the express special findings of

---

[14] In his petition for review to this court, petitioner also sought review of the Court of Appeals' resolution of the merits of his substantive challenge, arguing that the record does not support a conclusion that he refused to be deposed, and also that dismissal was, in all events, too harsh a sanction for his conduct. As earlier noted, we allowed review to consider whether the findings required by *Pamplin* are subject to preservation requirements. We decline to consider petitioner's challenge to the merits of the dismissal decision. *See* ORAP 9.20(2) (Supreme Court opinion need not address each question raised in petition for review).

fact that this court identified in *Pamplin v. Victoria*, 319 Or 429, 877 P2d 1196 (1994), as necessary for appellate review of the dismissal of an action as a sanction under ORCP 46 D. According to the majority, this court's cases, including *Pamplin*, require lower courts to make findings of fact supporting the court's order in this and similar circumstances to facilitate meaningful appellate review. However, according to the majority, those cases fail to address whether a party must request findings of fact, or object to the court's failure to make findings, to preserve for appellate review the issue of the absence of findings of fact to support the court's order. Addressing what the majority perceives as this court's past silence on the topic, the majority presents a dissertation on the presumed advantages of requiring preservation of error and concludes that this case presents no occasion for relieving petitioner of the obligation to preserve for appellate review the issue of the trial court's failure to make findings of fact.

The problem, as I see it, with the majority's opinion is that it misstates the substance of this court's prior analysis in its cases the requirement of findings of fact in this context. As a result of that incorrect premise, the majority opinion's exposition on the relative advantages of requiring preservation of error regarding issues raised on appeal is an abstract exercise.

The majority's faulty analysis is a serious concern for two reasons. First, that error leads the majority to examine and decide an issue that this case does not raise; I discuss that concern below at greater length. Second, the majority's analysis incorrectly states the true history of this court's multiple decisions to require findings of fact by lower courts to permit meaningful appellate review of awards of attorney fees and discovery sanctions. An accurate portrayal of that history will be an essential first consideration should this court in the future decide whether to require lower courts to observe specific procedures to safeguard meaningful appellate review by this court.

I begin by acknowledging that the result reached by the majority is correct. That is so, however, because certain rule changes have taken effect following certain decisions of

this court, discussed below. It is those after-the-fact rule changes, not the abstract merits of requiring preservation of errors asserted on appeal, that satisfy me that this court should decline to review petitioner's argument regarding the inadequacy of the trial court's findings of fact to support the dismissal of his petition.

I also agree with the majority's implicit assumption that, in analyzing this court's cases, the court properly can disregard the fact that those cases relied on different sources of statutory and rule-based authority to award attorney fees and to impose discovery sanctions. Regardless of those differing sources of authority, the court relied on the same prudential principles in requiring lower courts to make specific findings of fact supporting their decisions in those contexts.

I turn, then, to a brief review of this court's cases discussing the necessity of findings of fact by a trial court in these settings. In *Tyler v. Hartford Insurance Group*, 307 Or 603, 771 P2d 274 (1989), the plaintiff sought review of an award by the Court of Appeals of attorney fees to certain defendants in the case. The court did not set out any assignment of error by the plaintiff concerning the absence of findings of fact; neither did the court describe the plaintiff's arguments concerning the Court of Appeals order. Instead, the court stated:

"The order does not cite any statutory or other authority for the award of attorney fees. Both petitions for attorney fees, however, were based solely on ORS 20.105(1), which provides:

" 'In any civil action, suit or other proceeding in a district court, a circuit court or the Oregon Tax Court, or in any civil appeal to or review by the Court of Appeals or Supreme Court, the court may, in its discretion, award reasonable attorney fees appropriate in the circumstances to a party against whom a claim, defense or ground for appeal or review is asserted, if that party is a prevailing party in the proceeding and to be paid by the party asserting the claim, defense or ground, upon a finding by the court that the party wilfully disobeyed a court order or acted in bad faith, wantonly or solely for oppressive reasons.'

"That statute does not expressly require the Court of Appeals to make findings on the record. Nevertheless, we conclude that findings are required. Otherwise, we have no basis upon which to review the award of attorney fees, nor to consider what the Court of Appeals understood the relevant statutory words to mean. Accordingly, we remand this case to the Court of Appeals to make the necessary findings to support its order.

"The petition for review is allowed. The decision of the Court of Appeals is vacated. The case is remanded to the Court of Appeals for further proceedings."

*Id.* at 605.

This court's disposition in *Tyler* demonstrates what in later cases became even more explicit: It is virtually impossible to engage in appellate review of awards of attorney fees, often totaling many thousands of dollars, unless the lower court explains, in findings of fact, the factual basis for the award and the authority on which the court relied. The court stated that findings were *required.* It used that term advisedly: even though the statute authorizing the award was silent regarding the need to make findings of fact, the court itself required the trial court to make those findings to protect its ability to conduct meaningful appellate review of the award. The court took that step not in response to any apparent objection by the plaintiff or the defendants but, instead, for prudential reasons tied to the court's strong interest in safeguarding meaningful appellate review.

*Tyler* left open the question whether trial courts had the same responsibility as did the Court of Appeals to make findings of fact to support an award of attorney fees under ORS 20.105(1). This court answered that question in the affirmative the following year in *Mattiza v. Foster*, 311 Or 1, 803 P2d 723 (1990). In *Mattiza*, a conservator brought an action asserting that the defendant had exercised undue influence over the plaintiff's elderly aunt, causing financial injury. The trial court rejected that claim. After making extensive findings of fact, the trial court determined that the plaintiff had asserted her claim in bad faith and awarded $7,620 in attorney fees to the defendant. The Court of

Appeals affirmed. On review, this court construed the phrase "bad faith" in ORS 20.105(1) to require a finding, supported by evidence, that the plaintiff had pursued her claim for a reason other than the procurement of the fair adjudication of an authentic claim. The court also addressed the requirement of findings of fact to allow meaningful review by an appellate court of the relevant issues:

> "*The Need for Findings*
>
> "Although, in the absence of a request for special findings by one of the parties, the court 'may' make special findings or general findings, ORCP 62 A, the award of attorney fees under ORS 20.105(1) is a situation in which special findings are a prerequisite to meaningful review by an appellate court. *See Tyler v. Hartford Insurance Group*, 307 Or 603, 771 P2d 274 (1989) (requiring findings by Court of Appeals in cases under ORS 20.105(1)); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F2d 1486, 1508 (11th Cir 1985), *cert den* 475 US 1107 (1986) (under Florida law, the trial court 'must make a specific finding of "complete absence of justiciable issue of either law or fact" or face reversal or remand on the award of attorneys fees.'). Not only should the trial court make findings regarding the merit of the party's claim, defense, or ground for appeal or review, and which of the three grounds under ORS 20.105(1) the court is considering, but it should also specify which actions of the party are violative of the statute."

*Id.* at 10-11.

The *Mattiza* court noted that the trial court had discussed the facts extensively but had failed to resolve the key disputed fact, *i.e.*, it had failed to make a finding of fact about whether the plaintiff had had an improper motive in bringing and maintaining the action:

> "Did plaintiff act in bad faith? Even assuming that the trial court's conclusions noted above are supported by the evidence in this case, there was no finding—and the evidence would not support a conclusion—that plaintiff's actions constituted conduct, the *primary* aim of which was something other than the procurement of the fair adjudication of an authentic claim. We conclude that, regardless of other motives she may have had, plaintiff's primary aim

was to obtain an adjudication of a bona fide dispute. Defendant is not entitled to attorney fees under ORS 20.105."

*Id.* at 12. (Emphasis in original.)

*Tyler* and *Mattiza*, read together, indicate that trial and appellate courts were required to make findings of fact supported by evidence to facilitate meaningful appellate review of an award of attorney fees. Because those cases addressed fee awards under ORS 20.105(1), they logically did not answer the question whether the same requirement applied to the imposition of other significant sanctions.

In *Pamplin*, this court answered that question. In that case, the trial court dismissed the plaintiff's personal injury action under ORCP 46 B(2)(c) as a sanction for the plaintiffs' failure to provide discovery materials requested by the defendant. ORCP 46 B(2)(c) authorized the trial court to sanction a party's failure to provide discovery by making "such orders in regard to the failure as are just, including" dismissal of the action. The trial court heard the parties' conflicting arguments about whether the plaintiffs had complied adequately with the defendant's discovery requests. Without making any findings of fact to resolve those issues, the court ordered the action dismissed. This court construed the rule to permit dismissal only when that sanction is "just," and only if there is "willfulness, bad faith, or other fault of like magnitude by the disobedient party." *Pamplin*, 319 Or at 436. To confirm compliance with those criteria, this court required the trial court to satisfy the requirement of findings of fact that the court had discussed in *Mattiza*:

"We turn now to consideration of whether findings of fact are required to support the sanction of dismissal under ORCP 46 B(2)(c).

"In a similar context, this court has noted the importance of findings for 'meaningful review by an appellate court.' *Mattiza v. Foster*, 311 Or 1, 10, 803 P2d 723 (1990). *Mattiza* involved an award of attorney fees under ORS 20.105(1). Although that statute does not expressly require findings, this court held that findings are required, reasoning:

" 'Although, in the absence of a request for special findings by one of the parties, the court "may" make special findings or general findings, ORCP 62 A, the award of attorney fees under ORS 20.105(1) is a situation in which special findings are a prerequisite to meaningful review by an appellate court. 311 Or at 10 (citations omitted).'

"Here, as in *Mattiza*, the sanction of dismissal under ORCP 46 B(2)(c) is a 'situation in which special findings are a prerequisite to meaningful review by an appellate court.' As discussed above, that sanction is appropriate only when it is 'just' and only when there is willfulness, bad faith, or other fault of like magnitude by the disobedient party. To assess the propriety of imposing that sanction, an appellate court needs to know (1) the historical facts on which the trial court based its decision to impose it and (2) the analytical process by which the trial court concluded that dismissal is 'just' in view of those facts and in view of the other sanctions that are available. The present case provides a classic example of the difficulty of meaningful appellate review, because of the unresolved factual questions in the record.

"In summary, we hold that a trial court that imposes the sanction of dismissal under ORCP 46 B(2)(c) must make findings of fact and must explain why that sanction is 'just'; that a finding of willfulness, bad faith, or fault of a similar degree on the part of the disobedient party is required; and that a finding of prejudice to the party seeking discovery is not required."

*Pamplin*, 319 Or at 436-37. (Footnote omitted.)

In *Pamplin*, the defendant argued that the court should disregard the plaintiff's objection, raised for the first time on appeal, to the insufficiency of the trial court's factual findings to support dismissal.[1] The court's

---

[1] The defendant's brief to this court in *Pamplin* stated, in part:

"Plaintiffs argue that the trial court's decision to impose the sanction of dismissal against plaintiffs should be reversed because the court's order was not accompanied by specific findings of fact or law. The court's order in this matter was issued pursuant to ORCP 46 B. There is no requirement under that provision for the court to issue special findings. Normally, courts are free to rule on motions without being required to make special findings. Under ORCP 62, a court is not required to make special findings unless demanded to do so by a party. There was no such demand in this matter."

Brief of Defendant-Respondent at 20-21, *Pamplin*, 319 Or 429. (Footnote omitted.)

response—reversal and remand to the trial court because the court's factual findings were insufficient to justify dismissal—demonstrates that the court accorded no weight to the defendant's preservation argument.

Finally, this court later explained why it did not accept a preservation of error argument when the trial court failed to make the necessary findings of fact. In *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 957 P2d 1200, *modified on recons*, 327 Or 185, 957 P2d 1200 (1998), the Court of Appeals granted attorney fees to a defendant in an appeal. The trial court had dismissed the underlying employment discrimination action and the plaintiff had appealed, but lost. The defendant sought attorney fees, arguing that it was the prevailing party and that the appeal was frivolous. The plaintiff filed objections. Without making any findings of fact, the Court of Appeals granted attorney fees to the defendant in the sum of $12,000.

On review in this court, the plaintiff argued, among other things, that the Court of Appeals had failed to make required findings of fact to support the award of attorney fees. This court acknowledged that the plaintiff had "raised the issue of the lack of special findings in his petition for review to this court." The court explained, however, that preservation of that issue before the Court of Appeals *was not required*:

> "He was not required to take action to preserve that issue below, because it arose when the Court of Appeals issued its order."

*Id.* at 95 n 6.[2]

On reconsideration, this court explained why it regarded the lack of findings of fact as a reversible error, even though the plaintiff had asserted that issue for the first time on review:

> "Efficient and meaningful appellate review for abuse of discretion cannot occur on the present record, because we can only speculate about the possible relevant facts and

---

[2] The court's phrase, "because [the issue] arose when," perhaps better could have been stated as "because [the issue] did not arise until," but the meaning is the same.

legal criteria relied on for the court's award of attorney fees. Adequate findings about those matters need not be complex or lengthy. Rather, they must describe the relevant facts and legal criteria for the court's decision to award or deny attorney fees in any terms that are sufficiently clear to permit meaningful appellate review. Our opinion in this case adopted that description of the requirement of findings on appellate review of an award of attorney fees from *Mattiza* and *Tyler* and, after reconsideration, we adhere to that description."

*Id.* at 190-91.

The foregoing cases demonstrate that this court has applied consistent principles regarding appellate review of the lack of factual findings to support a serious sanction, whether the facts concerned either an award of attorney fees for frivolous litigation or the dismissal of an action for non-cooperation with discovery obligations. At the time of its prior decisions, no rule obligated a party to request findings of fact regarding those decisions, or compelled the adversely affected party to object to an insufficiency or lack of factual findings after-the-fact.

The court did not analyze the requirement of adequate findings of fact in those cases as the source of a procedural right that a party was free to invoke by requesting findings or, failing a request, to abandon. Rather, the court consistently has treated the duty to make findings of fact as an intrinsic part of the trial court's decisional responsibility. It is for that reason that *McCarthy* observed that the issue concerning the absence of findings arose when the Court of Appeals made its decision without entering the required findings of fact. Additionally, *McCarthy* noted that the plaintiff was not required (by any statute, rule, or court decision) to assert that issue at an earlier point *because* the issue arose solely from the unexplained decision of the Court of Appeals.

Under the extant rules of appellate procedure, this court's announcement of the lower court's obligation to accompany its decision on the merits with explanatory findings of fact was a perfectly reasonable one. It cannot be gainsaid that requiring findings of fact in this context safeguards meaningful appellate review that, without findings, would be difficult, if not virtually impossible.

Several of the pertinent rules have changed since this court decided those cases. Effective January 1, 2000, the legislature, acting through the Council on Court Procedures, amended ORCP 68, concerning the allowance of attorney fees in the trial courts, in two significant ways. First, the amendment deleted the following sentence in ORCP 68 C(4)(c)(ii): "No findings of fact or conclusions of law shall be necessary." Second, the amendment added ORCP 68 C(4)(e), which provides:

"On the request of a party, the court shall make special findings of fact and state its conclusions of law on the record regarding the issues material to the award or denial of attorney fees. A party shall make a request pursuant to this paragraph by including a request for findings and conclusions in the title of the statement of attorney fees or costs and disbursements or objections filed pursuant to paragraph (a) or (b) of this subsection. In the absence of a request under this paragraph, the court may make either general or special findings of fact and may state its conclusions of law regarding attorney fees."

The latter amendment is important because it creates a procedure, tied specifically to the recovery of attorney fees, authorizing either party to request special findings of fact and conclusions of law regarding any award of attorney fees. The amendment to ORCP 68 C(4)(c)(ii) also is important for purposes of this discussion, because a party now may employ a simple motion, under ORCP 14 A, to point out to the trial court that its findings of fact—general or specific—fail to apply the applicable legal criteria or to explain why the award or denial of fees is justified.

Another important rule, ORAP 13.10(7), also has changed. Before 1999, that rule was silent regarding any procedure for requesting findings of fact regarding an award of attorney fees in an appellate court. However, in 1999, the rule was amended to authorize a party to request findings regarding the facts and pertinent legal criteria, and to declare that a party's failure to request findings constituted a waiver of any objection to the absence of findings. A further amendment, made a permanent part of the rule in 2003, obligated every party who requests findings to incorporate the

request into the caption of that party's petition, objection, or reply. ORAP 13.10(7) now provides:

> "A party to a proceeding under this rule may request findings regarding the facts and legal criteria that relate to any claim or objection concerning attorney fees. A party requesting findings must state in the caption of the petition, objection, or reply that the party is requesting findings pursuant to this rule. A party's failure to request findings in a petition, objection, or reply in the form specified in this rule constitutes a waiver of any objection to the absence of findings to support the court's decision."

(Footnote omitted.)

Those rule changes place in perspective the real issue that this case poses: In light of the new rules of procedure now in effect, should the court continue to follow the prudential rule announced in its prior cases? My answer is no. A contrary answer would create one set of requirements for trial court fact-finding and another, different set of requirements for appellate court fact-finding. The need for uniformity in this area trumps any benefit that might result from different requirements concerning the obligation to request findings of fact in the trial and appellate courts.

It is of no consequence that *Pamplin* addressed the requirement of findings in the context of discovery sanctions and the rule amendments discussed above address procedures concerning attorney fees. *Pamplin* demonstrates that this court readily borrowed the rationale for its decision regarding a discovery sanction from cases concerning attorney fee disputes. The same interest in uniformity regarding procedural matters, noted above, indicates that, if the vitality of the findings procedures adopted in the attorney fee cases on which *Pamplin* relied is superseded or undermined by later rulemaking, so is the rationale for the prospective application of *Pamplin* in the context of discovery sanctions.

Petitioner failed to object to the sufficiency of the trial court's findings of fact to support the sanction of dismissal, although he easily could have done so. That failure prevents this court from addressing petitioner's contention on appeal that the findings failed to explain why dismissal, rather than a lesser sanction, was necessary. That is so

because intervening rulemaking has undermined this court's prior case law that, in the absence of later rulemaking, would have supported petitioner's argument. Accordingly, I concur in the result that the majority reaches, but not in its rationale.[3]

I concur.

Gillette, J., joins in this concurring opinion.

---

[3] The majority concludes its opinion by reinforcing "the importance of special findings to meaningful appellate review of a dismissal under ORCP 46 B(2)(c)[ ]" and draws particular attention to the vital rule that the specific findings required in *Pamplin* play when an appellate court examines a trial court's exercise of discretion under that rule. *Peeples*, 345 Or at 225. The majority also observes that a failure by a trial court to enter the necessary findings of fact may prevent the appellate court from concluding that a dismissal is warranted. *Id.* I join fully in those statements.