## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ADAM TROY STELTZ,
*Defendant-Appellant.*

Marion County Circuit Court
10C46694; A149320

313 P3d 312

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

HADLOCK, J.

Defendant appeals a judgment of conviction for three counts of first-degree sodomy (Counts 1, 4, and 5), ORS 163.405, one count of first-degree unlawful sexual penetration (Count 2), ORS 163.411, one count of first-degree sexual abuse (Count 3), ORS 163.427, and two counts of second-degree sexual abuse (Counts 6 and 7), ORS 163.425. He raises five assignments of error. We reject defendant's first and second assignments of error without discussion. In his third assignment of error, defendant contends that, by requiring him to wear a stun belt, the trial court violated his right to be free from physical restraints during his trial. As explained below, we reject the arguments that defendant raises in conjunction with that assignment of error, which are not preserved for appeal. In his fourth and fifth assignments of error, defendant argues that the trial court erred when it failed to merge the convictions for Counts 6 and 7 into the convictions for Counts 4 and 5. As to those assignments of error, we agree with defendant and, therefore, remand with instructions.

Defendant was an inmate at Oregon State Penitentiary and Oregon State Correctional Institute when he was accused of sodomizing and sexually abusing two other inmates. At his trial, the court required defendant to wear a Remote Activated Custody Control Belt (stun belt). The court explained its reasoning as follows:

"THE COURT:  *** [A]s Counsel are aware, pursuant to the request of the sheriff's office, I, yesterday, entered a formal order submitted by the sheriff's department permitting the use of the [stun] belt on [defendant] in the courtroom. And [defense counsel], anything that you wanted to say about that for the record?

"[DEFENSE COUNSEL]: Yes, Your Honor. We do object to the use of the belt; however, when given the alternative of the shackles, since this is a jury trial, we will acquiesce to the belt.

"*****

"THE COURT:  And so I will just state for the record, and Counsel, I'm sure, are both aware of this, that my understanding from the sheriff's department was that

[defendant] had some behavior issues such that they were concerned about his ability to, essentially, control his behavior in a courtroom.

"The [stun] belt is not visible to the jury. He is * * * dressed in civilian clothing, and so that's a mechanism to ensure that we don't have any outbursts or disruptions that is not visible to the jury, and therefore nothing that is going to prejudice the jurors by having them draw any conclusions about [defendant] based on that. So on that basis the Court did allow it."

On appeal, defendant contends that the trial court violated his right to be free from physical restraints during trial. Specifically, defendant argues that the trial court erroneously deferred to the sheriff's office when determining whether defendant should be required to wear a stun belt. Defendant also contends that the court impermissibly failed to "make a record of why the stun belt was necessary." Defendant asserts that the court's erroneous requirement that he wear a stun belt prejudiced him at trial by influencing his decision not to testify. The state responds that, among other things, defendant's arguments are unpreserved. We agree with the state.

Oregon has long recognized the "right of an accused to be free from physical restraint during a criminal trial." *State v. Wall*, 252 Or App 435, 437, 287 P3d 1250 (2012), *rev den*, 353 Or 280 (2013). That right "has common-law and constitutional underpinnings." *Id.* "Specifically, physically restraining a defendant implicates Article I, section 11, of the Oregon Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id.* Nevertheless, a trial court has discretion to order a defendant to wear shackles or a stun belt if there is evidence of an "immediate and serious risk of dangerous or disruptive behavior." *Id.* at 439 (internal quotation marks omitted); *see also id.* at 442 (concluding that there is no difference between visible and nonvisible restraints "for purposes of the threshold showing that is required before restraints may be lawfully imposed"). In *Wall*, we emphasized two aspects of the trial court's task in exercising that discretion. First, the trial court should make a record of the relevant information it has received and evaluated. *Id.* at 439. Second,

the court may not simply defer to others' opinions of the risk that the defendant may pose; rather, the information before the court must provide it with a basis "to make an independent assessment of the risk." *Id.* (citation omitted).

As noted, defendant argues on appeal that the trial court did not perform either of those tasks; that is, defendant contends that the court impermissibly deferred to the sheriff's risk assessment and failed to make a record of its reasons for requiring restraints. But the record does not indicate that defendant made either of those arguments to the trial court. As far as we can discern from the record, the restraint issue first arose when, on the day before trial, the trial court entered an order authorizing the use of a stun belt on defendant during trial. The next day, the court gave defendant an opportunity to comment on the record about that order. Defense counsel responded, "We do object to the use of the belt; however, when given the alternative of the shackles, since this is a jury trial, we will acquiesce to the belt." That brief and general objection was not sufficient to preserve the arguments that defendant raises on appeal, as it did not alert the trial court either to the need to make findings or to defendant's contention that the court impermissibly was deferring to the sheriff. Moreover, the absence of more specific arguments prevented development of the record. That is, had defendant asserted below that the trial court could not defer to the sheriff and needed to explicitly detail its own reasons for requiring restraints, the trial court could have done so. For both of those reasons, defendant's general objection did not adequately preserve his current arguments for appeal. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) ("preservation fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it"); *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (to preserve a claim of error for appeal, a party must "provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted"); *see also Peeples*, 345 Or at 221-23 (preservation principles apply even when the trial court is required to make particularized findings on the record).

We turn to defendant's contention that the trial court erred in failing to merge certain of his convictions. Defendant was convicted of, among other things, two counts of first-degree sodomy (Counts 4 and 5) and two counts of second-degree sexual abuse (Counts 6 and 7), all relating to the same victim. It is undisputed that the indictment charged Counts 4 through 7 as separate incidents; it also is undisputed that the record contains sufficient evidence to support four separate convictions. In his fourth and fifth assignments of error, defendant contends that the trial court nonetheless erred by failing to merge his convictions on Counts 6 and 7 into his convictions on Counts 4 and 5. In support of his argument, defendant asserts that the state, in closing argument, treated the second-degree sexual abuse counts (Counts 6 and 7) as lesser-included offenses of the sodomy counts (Counts 4 and 5). In other words, defendant argues that the state elected to prosecute Counts 4 through 7 as relating to only two episodes of criminal conduct, not four. Defendant concedes that he did not preserve that argument in the trial court, and he asks us to address the issue as plain error under ORAP 5.45(1). The state argues that the indictment and evidence, not the prosecutor's closing argument, should control, and that the court did not plainly err by failing to merge the convictions.

As explained below, we conclude that the trial court's failure to merge four of defendant's convictions into two convictions constitutes an error of law apparent on the face of the record, warranting the affirmative exercise of our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). Accordingly, we reverse and remand with instructions.

Analysis of unpreserved error under ORAP 5.45(1) involves a two-step process. First, we consider three "plain error" criteria: (1) whether the claimed error is one of law; (2) whether it is obvious and not reasonably in dispute; and (3) whether it appears on the face of the record without requiring the court to go outside the record or choose between competing inferences. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Second, if those criteria are met, we must determine whether to exercise our discretion to correct the error. *Ailes*, 312 Or at 382 n 6.

Whether convictions should merge is a legal question that is governed by the "anti-merger" rule in ORS 161.067(1):

"When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

Under that statute, merger would be appropriate in this case if Counts 4 through 7 involved two, as opposed to four, incidents of "conduct or criminal episode[s]," and if the second-degree sexual abuse charges are lesser-included offenses of first-degree sodomy. *State v. Sanders*, 189 Or App 107, 110, 74 P3d 1105 (2003), *rev den*, 336 Or 657 (2004) (merger of convictions required where the offenses involved the same act of violence against a single victim and the merged conviction is a lesser-included offense of the more serious offense). The state argues only that the jury could have found that defendant engaged in four separate criminal episodes as charged in Counts 4 through 7; it does not dispute that, as charged in this case, second-degree sexual abuse is a lesser-included offense of first-degree sodomy. Accordingly, we confine our analysis to determining whether the number of episodes at issue is "not reasonably in dispute." *Brown*, 310 Or at 355.

The state elected, during both closing argument and sentencing, to prosecute Counts 4 through 7 as presenting alternative theories of guilt for only two criminal acts. In closing argument, the prosecutor, describing the two second-degree sodomy charges (Counts 4 and 5), explained that:

"One count is for having oral sex with [victim] forcibly. One count is having anal sex forcibly with [victim]. Like I've already argued to you, it's not the State's argument that [those incidents] happened just once, * * * but they at least happened orally and anally one time."

The prosecutor also described the two second-degree sexual abuse charges (Counts 6 and 7) as lesser-included offenses of first-degree sodomy ("sex abuse two is a lesser included, essentially, of sodomy in the first [degree]"). Explaining the

difference between the sexual abuse charges and the sodomy charges, the prosecutor told the jury that

> "the distinction is really easy, it's just that sodomy requires forcible compulsion, sex abuse in the second degree only requires non consensual sex. Meaning that he just didn't say yes to him. He wasn't on board with it, and it happened anyway.
>
> "* * * * *
>
> "And I would argue to you that something illegal happened. You may find it was sodomy in the first degree, and that it was forcible, and you may say it was just consensual, but something wasn't right in there. * * *
>
> "So in conclusion, I'm going to ask you to find him guilty of those counts as well."

At sentencing, the state acknowledged that the record included evidence to support four separate convictions. The state reiterated, however, that it had presented Counts 6 and 7 to the jury as alternatives to Counts 4 and 5. Accordingly, the state asserted that the sentence on Count 6 should run concurrently to the sentence on Count 4, and that the sentences on Counts 7 and 5 also should run concurrently:

> "[PROSECUTOR]:   Finally, in [counts six and seven,] sex abuse two, as I stated on the record, I believe they are indicted as separate criminal episodes, so Your Honor can find, based on the jury's verdict, that those can run consecutive. * * *
>
> "But * * * the State will point to Your Honor that the State argued those as an either/or. That you could find something was forcible, or you could find that it * * * was not consensual, but *I think my argument was please find that it was one or the other. And so the State is not asking for consecutive times on count six and seven. We're asking for those to run concurrent.*
>
> "* * * * *
>
> "THE COURT:   And counts six and seven you are asking to run concurrent with four, concurrent with five, six concurrent with four, and seven concurrent with five?
>
> "[PROSECUTOR]:   Correct to all."

(Emphasis added.) The court expressly adopted the state's recommendations:

"[THE COURT]: In counts four and five it is appropriate that those counts run consecutively to each other, because they are not all the same criminal episode. The evidence was clear that this victim was assaulted sexually on multiple different occasions. \* \* \* [A]s to the remaining counts [six and seven], I will adopt the State's recommendations."

(Emphasis added.) Accordingly, the court entered a judgment ordering the sentence on Count 6 to run concurrently to the sentence on Count 4 (as well as concurrently to certain other sentences) and the sentence on Count 7 to run concurrently to the sentence on Count 5 (and to the sentences on all other counts).

Thus, the state conceded at sentencing that Counts 6 and 7 had been prosecuted as presenting alternative theories of guilt for the same incidents that formed the basis for the convictions on Counts 4 and 5. Moreover, the trial court accepted that representation when it ordered the sentences on Counts 6 and 7 to run concurrently to those on Counts 4 and 5. The difficulty is that—given the state's acknowledgement that (1) it had chosen to prosecute Counts 4 through 7 as involving only two episodes of criminal conduct, and (2) the acts of sexual abuse as charged in Counts 6 and 7 were lesser-included offenses of the sodomy charged in Counts 4 and 5—the trial court should have merged the pairs of convictions, not merely ordered the sentences to run concurrently. Given the state's unambiguous acknowledgement that it prosecuted Counts 6 and 7 as presenting only alternative theories of criminal liability, not independent offenses, the trial court plainly erred by not merging the convictions as defendant argues it should have.

We conclude that it is appropriate to exercise our discretion under *Ailes* to correct that error. First, the error in this case is grave. The presence of two additional second-degree sexual abuse convictions on defendant's criminal record misstates the nature and extent of the conduct for which the state chose to prosecute him. *See State v. Valladares-Juarez*, 219 Or App 561, 564, 184 P3d 1131 (2008) (considering that

factor in assessing whether to address a failure to merge convictions as plain error). Second, although the state may have an interest in avoiding unnecessary proceedings on remand, it has no interest in convicting a defendant twice for the same crime. *Id.* Therefore, the competing interests of the parties weigh in favor of exercising our discretion to correct the error. Finally, we cannot identify any strategic reason that defendant may have had for not objecting to the trial court's failure to merge the convictions. *Id.* at 564-65. Accordingly, we reverse and remand the case to the trial court with instructions to merge defendant's conviction on Count 6 into his conviction on Count 4 and to merge defendant's conviction on Count 7 into his conviction on Count 5 and for resentencing, but otherwise affirm. *See Sanders*, 189 Or App at 111-12 (remanding entire case for resentencing when trial court erred by not merging convictions).

Reversed and remanded with instructions to merge defendant's conviction on Count 6 into his conviction on Count 4 and to merge defendant's conviction on Count 7 into his conviction on Count 5 and for resentencing; otherwise affirmed.