Submitted March 11, general and supplemental judgments affirmed June 17, petition for review denied October 7, 2009 (347 Or 258)

In the Matter of the Marriage of

A. C. H.,
*Petitioner-Respondent,*
*and*

D. R. H.,
*Respondent-Appellant.*

Clackamas County Circuit Court
DR05070570; A134248

210 P3d 929

Philip F. Schuster, II, and Dierking & Schuster filed the briefs for appellant.

Mark Johnson and Johnson & Lechman-Su PC filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

**SCHUMAN, J.**

In this marital dissolution case, husband appeals from a general judgment setting forth his obligation to pay child support for the parties' three minor children and a supplemental judgment awarding attorney fees to wife. On appeal, he contends that he is not M's father for purposes of a support obligation because M was conceived through an artificial insemination process that did not conform to statutory requirements. He also contests the trial court's award of attorney fees. On *de novo* review of the general judgment, ORS 19.415(3), we affirm. We also affirm the supplemental judgment awarding attorney fees.

In July 2005, wife filed a petition for dissolution of the parties' marriage. The petition recited: "There have been four children born or adopted of the marriage[.]" One child is an adult. The other three are minors, and the petition requested that husband "be required to pay child support to petitioner" for each minor child until the child "marries, dies, becomes emancipated, or ceases to be a child attending school as defined by ORS 107.108(4)."

The two older children were wife's from a prior marriage. Husband has adopted them. The youngest child, M, whose support is at issue in this case, was conceived in late January or early February 2003, through artificial insemination with donated semen (husband has been sterile since he was a teenager), and was born in November 2003, during the marriage.

On March 15, 2006, the parties appeared before Judge Herndon for a judicial settlement conference. The parties reached a settlement, which the trial court recited and both parties affirmed on the record in open court. One provision of the settlement is a stipulation that included, among other details, provisions relating to custody, parenting time, and support of the three minor children, including M. Notably absent from the settlement agreement is any mention of husband's status as the legal parent of M. On March 22, 2006, the trial court signed a general judgment dismissing the dissolution pursuant to UTCR 6.020(2).

Subsequently, husband questioned his status as M's legal father, and the court rescinded the judgment of dismissal. With the court's permission, husband filed a first amended response and counter-petition, denying that he is the legal father of M. Husband sought, instead, to establish that he is the stepparent of M, with whom he stood *in loco parentis* and has a parent-child relationship. Under ORS 108.045(1), a stepparent's obligation to provide support for the stepchild "shall cease upon entry of a judgment of dissolution." Wife filed a response alleging that husband is the legal father of M.

The matter came for hearing on September 21, 2006, with the preliminary issue being the enforceability of the March 15, 2006, settlement agreement. To provide background for that issue, the parties described the circumstances leading to M's birth. The parties' accounts of those circumstances differed significantly. Wife testified that the parties had attempted several times to conceive a child through artificial insemination at fertility clinics, without success. Some two years after their last failed attempt, according to wife, and with husband's knowledge and agreement, she purchased an artificial insemination kit from an Internet vendor and, with the help of a friend, found a private semen donor. Wife testified that a friend picked up the semen at the donor's apartment and that husband later inseminated her with it.

Husband agreed with wife's description of the parties' failed attempts to conceive through artificial insemination at fertility clinics. However, he testified that he had no knowledge of wife's purchase of the insemination kit or her arrangements with the private donor and that he did not assist wife with the insemination. He said that when she became pregnant, wife told him that she had been inseminated at a clinic.

The trial court accepted wife's version of the facts. In concluding that the settlement agreement of March 15, 2006, is enforceable, the trial court explicitly found wife's version of the facts to be credible and found that, regardless of whether husband was aware at the time of the insemination that the semen donation did not occur through a clinic, husband was

aware of that fact by the time of the March 15, 2006, settlement. As the trial court found, "I have ample credible testimony that [husband] knew the true facts at the time he entered into the stipulation with Judge Herndon. I found [wife]'s testimony to be credible." The trial court therefore concluded that husband had waived any right to litigate issues concerning his paternity. The court determined that, because the case had been settled by Judge Herndon, it would not proceed to trial. The general judgment of dissolution includes the finding: "The parties have a joint daughter, [M], born to the parties during their marriage."

The court subsequently issued a supplemental judgment awarding wife her attorney fees. Husband appeals, challenging the trial court's enforcement of the March 15, 2006, settlement agreement, its determination that M is the parties' joint child, and the award of attorney fees to wife.[1]

■ The issues on appeal primarily concern husband's parental status with respect to M. It is undisputed that M was conceived through artificial insemination with the semen of a donor and that, therefore, husband is not M's biological father. It is also undisputed that, when husband stipulated on March 15, 2006, to the payment of child support for M, he knew that M had been conceived through artificial insemination. Additionally, the trial court found that husband was aware of and assisted in wife's insemination with the donor semen that resulted in the conception of M, and that he therefore knew that the process was not performed in compliance with ORS 677.360, under which only physicians and persons under their supervision may select artificial insemination donors and perform artificial insemination.

---

[1] The matter was referred to the Appellate Settlement Conference Program. The parties were not able to reach a complete settlement through mediation. Wife nonetheless contended that the parties had settled some of the issues raised on appeal and filed a motion to dismiss the appeal in part, ORS 19.410(3) ("If the parties to an appeal settle all or part of the matter on appeal, the trial court has jurisdiction to enter any orders or judgments that may be necessary to implement the settlement. If the settlement disposes of all issues on appeal, the appellate court may dismiss the appeal. If the settlement disposes of part of the issues on appeal, the appellate court may limit the scope of the appeal to the issues not disposed of by the settlement."). We denied wife's motion to dismiss, reasoning that the issues raised by the motion to dismiss depended on a resolution of the issues raised on the merits of the appeal. Wife renews the motion, and we adhere to our prior ruling.

Although our review is *de novo*, we give considerable deference to the trial court's demeanor-based credibility findings, and we see no reason in the record to disturb them here. *O'Donnell-Lamont and Lamont*, 337 Or 86, 89, 91 P3d 721 (2004), *cert den*, 543 US 1050 (2005) ("In our *de novo* review of the record, we give 'considerable weight to the findings of the trial judge who had the opportunity to observe the witnesses and their demeanor in evaluating the credibility of their testimony.' "). Thus, we undertake our analysis of the legal issues raised on appeal with that factual foundation.

■　　As noted, the trial court ruled that, by agreeing in the settlement to pay support for M under circumstances showing that he was fully aware of and consented to wife's artificial insemination, husband waived, or was estopped from, any challenge to his status as a parent. On appeal, husband starts with the simple premise that the settlement agreement did not, in fact, determine whether he is M's legal father, which, he contends, may be established by only four possible means—adoption, paternity testing, voluntary acknowledgment, or, in the case of artificial insemination, the procedures outlined in ORS 677.355 through 677.370—and that, despite the trial court's findings and husband's conduct toward the child, none of those requirements has been met here. Husband has not adopted M and, obviously, paternity testing would be pointless here, where it is undisputed that husband is not M's biological father. We need not delve into whether the parties' March 15, 2006, stipulation constitutes a "voluntary acknowledgment" of parental status by husband or whether, as the trial court held, husband waived the right to challenge parental status, because we conclude that, under the facts as the trial court found them and we have adopted, husband's parental status is established under the statutes governing artificial insemination. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (appellate court can affirm trial court on a basis other than that upon which the trial court relied if evidentiary record is sufficient to support alternative basis for affirmance).

ORS 109.239 to 109.247 set forth the rights, obligations, and relationships arising out of the artificial insemination of a woman with the semen of a man who is not her

husband. ORS 109.239 provides that neither the child nor the *donor* has rights, obligations, or interests with respect to the other. ORS 109.243, however, provides that the relationship between the child and the mother's *husband*

> "shall be the same to all legal intents and purposes as if the child had been naturally and legitimately conceived by the mother and the mother's husband if the husband consented to the performance of artificial insemination."

Husband consented to and participated in the artificial insemination of wife. Accordingly, his legal obligations with respect to M, including the obligation to pay child support, are the same as if she were his biological child.

Husband points out that provisions in ORS chapter 677, enacted in the same bill as ORS 109.243,[2] also govern artificial insemination and, as noted above, require that an insemination must be performed by a physician, with the *written* consent of the parents. According to husband, an artificial insemination that is not performed in compliance with those requirements is not valid for the purpose of establishing rights and obligations between the child and the husband of the inseminated woman.

We disagree. The flaw in husband's reasoning is that ORS 109.243 does not include a requirement for the husband's *written* consent to the insemination; nor does that statute cross-reference the provisions in ORS 677.355 to 677.370 or require that the insemination must have been done pursuant to those provisions or by a physician. The statute requires only that the husband "consented to the performance of artificial insemination." Husband's interpretation would require the insertion of additional requirements that the consent to all artificial insemination be provided in writing, and that the artificial insemination be performed by a physician. We decline to insert those requirements when the legislature has not done so. ORS 174.010 (forbidding courts from inserting words into or deleting words from a statute). Thus, for purposes of determining the legal relationship between the mother's husband and the child conceived through artificial insemination, we conclude that the only

---

[2] Or Laws 1977, ch 686.

inquiry is whether the husband "consented to the performance of artificial insemination." ORS 677.355 defines "artificial insemination" as "introduction of semen into a woman's vagina, cervical canal or uterus through the use of instruments or other artificial means." That definition also applies to ORS 109.243. *See* Or Laws 1977, ch 686, § 1 (defining term for "this Act," which, when codified, became both ORS 677.355 to 677.370 and ORS 109.243). There is no dispute that wife was artificially inseminated within the meaning of ORS 677.355, or that husband consented to the process. Thus, the legal relationship described in ORS 109.243, including the support obligation at issue in this case, obtains regardless of whether husband's consent was written.[3]

We reject without further discussion husband's contention that the trial court was without authority to award attorney fees attributable to the parties' litigation of the parental status issue in the context of the dissolution. Husband further asserts that the trial court made no findings as to attorney fees under the factors set forth in ORS 20.075(1). *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 185, 187, 957 P2d 1200 (1998). However, although the record shows that husband made a request for findings on the merits, he made no request for findings as to attorney fees. Accordingly, the issue is not preserved, and we therefore do not address it. *Peeples v. Lampert*, 345 Or 209, 191 P3d 637 (2008).

General and supplemental judgments affirmed.

---

[3] We have reviewed the legislative history offered by husband and it does not require or suggest a different conclusion. *See* ORS 174.020 (allowing consideration of legislative history proffered by party); *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009) (same, despite apparently unambiguous statutory text).